JANE E. THOMAS *et al.* v. HUGH WILLIAMS, *as Executor, etc.*

No. 16,143.

SYLLABUS BY THE COURT.

1. EXECUTORS AND ADMINISTRATORS—*Sale of Real Estate to Pay Debts—Statute of Limitation.* The provision that an action for relief not otherwise provided for in the statute of limitation can only be brought within five years after the cause of action shall have accrued has no application to a proceeding instituted in the probate court by an executor for the sale of real estate to pay debts of the testator.

2. ——— *Reasonable Time in which to Sell.* There being no statute of limitation relating to the matter, the requirement of the law is that such a proceeding can be maintained only if begun within a reasonable time, in view of all the circumstances of the case.

3. ——— *Delay in Petitioning for a Sale Explained.* A delay of six years by a foreign executor to petition for the sale of land in this state to pay the indebtedness of the testator is not unreasonable when it is occasioned by the pendency of litigation carried on in good faith to determine the validity and amount of such indebtedness.

4. ——— *Order Allowing Claim—Prima Facie Evidence.* In a
proceeding to subject real estate to the payment of the debt
of a decedent, the allowance of the claim against the executor
or administrator by a court having jurisdiction is *prima facie*
evidence against the heirs or devisees of its validity and due
presentation. This is true even of an order made by the court
of another state, in virtue of the provision of the statute
(Gen. Stat. 1901, § 2950) authorizing a foreign executor or
administrator, where none has been appointed in Kansas, to
sell real estate of the decedent situated in this state for the
payment of debts in the same manner as though he had been
appointed here.

5. ——— *Innocent Purchaser from Devisees.* One who buys
land in this state from the devisees, seven years after the
death of the testator, while a resident of another state, is not
protected as an innocent purchaser against proceedings there-
after brought to subject it to the payment of debts of the
estate.

Error from Lyon district court; FREDERICK A.
MECKEL, judge. Opinion filed July 3, 1909. Affirmed.

*Dennis Madden,* and *W. C. Roberts,* for the plain-
tiffs in error.

*L. B. Kellogg, W. L. Huggins,* and *C. M. Kellogg,* for
the defendant in error.

The opinion of the court was delivered by

MASON, J.: William E. Jones, a resident of New
York, died November 3, 1898, owning land in Kansas,
which he devised to David W. Jones and Jane E.
Thomas. His will was admitted to probate in New
York on January 13, 1899, and Hugh Williams was
qualified as his executor. The devisees conveyed the
land, April 18, 1906, by warranty deed, to Thomas
Price. August 19, 1907, the executor applied to the
probate court of the county in which it was situated
for an order to sell it for the payment of debts and
charges of administration, under the statute (Gen.
Stat. 1901, § 2950) authorizing such procedure. His
petition was granted, over the objection of the de-

visees and Price, who appealed to the district court, where the decision was affirmed. The appellants prosecute error, and make these contentions: (1) That the proceedings for the sale of the real estate were not maintainable because brought too late; (2) that the only evidence introduced to prove the indebtedness against the estate—an order of the New York surrogate court allowing it—was inadmissible against the devisees; (3) that Price was protected as an innocent purchaser.

The plaintiffs in error invoke the statute (Civ. Code, § 18, ¶ 6) requiring an action for relief concerning which no other provision is made to be brought within five years after the accrual of the cause of action. The case, however, does not fall within its terms, for the litigation which is begun by the filing of a petition in the probate court for the sale of real estate to pay the debts of a decedent does not constitute an action, but a special proceeding, or a part of a special proceeding. (Civ. Code, §§ 4, 5; *Lanning v. Gay*, 70 Kan. 353; 1 Cyc. 721; 1 Encyc. Pl. & Pr. 112; 1 Enc. L. & P. 1003, note 13.) The statute of limitation, not being made applicable to special proceedings by express enactment or by necessary implication, does not directly affect them. (*Skidmore v. Romaine*, 2 Bradf. [N. Y.] 122, 127, and cases cited in 25 Cyc. 1061.) Even a requirement that provisions of the code concerning the prosecution of a civil action shall be followed in special proceedings has been said not to "refer to provisions of the law designed to prevent the prosecution of actions because of delay in commencing them." (*Hartley v. K. & N. W. R'y Co.*, 85 Iowa, 455, 461.) In volume 18 of the Cyclopedia of Law and Procedure, at page 705, it is said:

"The general statutes of limitation do not as a rule apply to an application for the sale of a decedent's real estate, although a contrary view has been asserted."

The cases are in substantial agreement in results,

although not in reasons. The exceptional decisions re-
ferred to are those of the courts of Indiana, where the
code definition of the word "action" is broad enough to
cover what is called in our practice a "special proceed-
ing." But even there the statute does not run during
the pendency of litigation against the administrator for
the establishment of the claim. (*Scherer v. Ingerman,
Administrator,* 110 Ind. 428.) The usual requirement
made as to the time of beginning such proceedings is
thus stated in volume 11 of the American and English
Encyclopædia of Law, at page 1074:

"If no time is fixed by the statute, the courts gen-
erally hold that it must be made within a reasonable
time, to be determined by the court under the circum-
stances of the case; and after such time has elapsed
leave to sell will not be granted, whether the property
is still in the hands of the heirs or devisees or has been
sold and conveyed by them to third persons. Some
courts have adopted a period, by analogy to the statute
of limitations, or otherwise, after which an application
will not be entertained, unless special circumstances
are shown which excuse the delay, and no equities of
third persons intervene."

(See, also, to the same effect 18 Cyc. 707; 2 Woerner,
Am. L. of Adm., 2d ed., § 465; 26 Am. St. Rep. 22,
note.)

The question for determination is not how much de-
lay would be sufficient if unexplained to defeat a pro-
ceeding of this kind, but whether the trial court was
justified in finding that the delay in the present case
was reasonable and therefore had no such effect. The
indebtedness sought to be collected consisted of $2261.03
owing to Anna H. Jones and Thomas O. Jones, and
$479.06 owing to Thomas O. Jones. The evidence
tended to show these facts: William E. Jones was the
executor of Ann Jones, under testamentary letters is-
sued by the same court that afterward appointed Hugh
Williams as his executor. Anna H. Jones and Thomas
O. Jones claimed that William O. Jones, as such execu-
tor, had received $3000 which it was his duty to pay

to them. The only persons interested in resisting this claim were David W. Jones and Jane E. Thomas. On their behalf, and after consultation with David W. Jones and the husband of Jane E. Thomas, Hugh Williams, as executor of William E. Jones, employed counsel to contest the matter, and the resulting litigation which was conducted in connection with the settlement of the William E. Jones estate lasted six years, and resulted, on March 8, 1907, in the claim being allowed in the sum of $2261.03. On June 5, 1907, the court, by an order made in the matter of the William E. Jones estate, allowed this sum as a demand against Hugh Williams as executor, and at the same time made the allowance of $479.06 in favor of Thomas O. Jones.

Why the litigation lasted so long is not explained, but that it did so does not justify an inference of bad faith. Inasmuch as the principal claim against the estate of William E. Jones grew out of a question of his conduct as executor of Ann Jones, it was natural if not necessary that its adjudication should be held in abeyance until the Ann Jones estate was settled. Until such settlement was made it could not be known how much if anything would have to be paid on the claim, and until that was determined it was impracticable to institute proceedings to subject the real estate to its payment. No reason is shown why the smaller claim might not have been established sooner, but the executor clearly exercised good business judgment, in the interest of all concerned, in withholding proceedings to provide for its payment out of the real estate until the entire amount necessary to be realized from that source should be ascertained. The executor was not bound to wait until the demands against the estate were passed upon before moving to create a fund for their satisfaction (*Randel v. Randel,* 64 Kan. 254), but he was justified in doing so where otherwise he could not ascertain the amount for which the estate was to be held. We think the trial court correctly decided that

under all the circumstances the delay in asking a sale of the real estate was excusable.

It is true that under some circumstances, where no administration has been had in this state, the claimant may himself bring an action here to subject the real property of his deceased debtor to the payment of his demand (*McLean v. Webster*, 45 Kan. 644), notwithstanding there may be personal property elsewhere sufficient for that purpose (*Cooper v. Ives*, 62 Kan. 395), and probably his right in that respect is unaffected by any proceedings or conditions existing in another jurisdiction (*Plumb v. Bateman*, 2 App. Cas. [D. C.] 156). But he can not be regarded as sleeping upon his rights when his claim is in the course of investigation and adjustment in the state where it originated, in the orderly administration of his debtor's estate.

The contention that the indebtedness of the William E. Jones estate was not sufficiently established can not be sustained. The transcript of the record of the surrogate court showed that in the course of what is called a judicial settlement of the accounts of the executor (a proceeding that under the New York statute is conclusive only upon certain enumerated matters) the court "adjudged and decreed" that the estate was indebted to the claimants in the amounts stated. This language speaks for itself, and shows an allowance of the claims which is none the less effective because made while the court upon request of the executor was examining and passing upon his accounts. The order allowing the claim did not conclude the devisees (*Black v. Elliott*, 63 Kan. 211), but was admissible in evidence against them, and established a *prima facie* case, which they made no effort to overcome. This conclusion accords with the clear weight of authority, and, as we think, with the better reason.

"Although there is considerable conflict in the cases decided in other states with reference to the effect of the allowance of a claim by an administrator as afford-

ing the basis on which [a] sale of real estate may be ordered, the weight of authority seems to support the proposition that the allowance in probate is *prima facie* sufficient to authorize an order for the sale of the real estate, and that, while the heirs who are parties to the proceedings for the sale of real estate may on the hear- ing contest the validity of the claims already allowed in a proceeding to which they were not parties, yet it is not incumbent on the administrator to proceed in the first instance to prove up the claims for the pay- ment of which he asks that real estate be sold. To cast any such burden upon him would be manifestly un- just. He is not the claimant, but is simply proceed- ing, in the administration of his office, to secure assets with which to pay claims which the court may have already directed should be paid. As supporting the rule that the allowance of the claims by the probate court is sufficient *prima facie* as against the heirs to authorize an order for the sale of real estate, see *Hop- kins v. Stout*, 69 Ky. 375; *Steele v. Lineberger*, 59 Pa. 308; *Mason v. Bair*, 33 Ill. 194; *Stone v. Wood*, 16 Ill. 177; *Beckett v. Selover*, 7 Cal. 215, 228, 68 Am. Dec. 237; 2 Woerner, Adm. § 466. . . . In the present case the allowance of the claims by the probate court was proven, and defendants made no effort whatever to disprove or impeach the claims thus allowed. We think that, after the allowance of the claims was shown, it was for the defendants, if they desired to question the validity of any of the claims, to at least introduce some evidence of their invalidity, and thus overcome the *prima facie* case made by proof of allow- ance." (*Milburn v. East*, 128 Iowa, 101, 106, 107.)

"The allowance of a claim against an estate by the administrator and the probate judge has the same effect as a judgment. But as the heirs are not bound by a judgment against the administrator, they are at liberty to dispute any claim so allowed, because the allowance has no higher effect than a judgment. If the allowed claims are made the basis on which to ob- tain an order to sell the real estate, the heirs are not precluded from contesting them as freely as though they had acquired none of the properties of a judg- ment; for as to the heirs they are not yet *res judicata*. When a judgment or *quasi*-judgment has been recov- ered against an administrator or executor, and pro- ceedings are taken to compel its payment by the sale

of real estate, the majority of the authorities seem to treat it as *prima facie* evidence of the claim, and to require the heir to assume the burden of showing it to be unjust, while the minority insist that it is not admissible against the heirs, and that those holding such judgment must establish their demand as though no prior recovery or allowance thereof had been had." (1 Freeman, Judg., 4th ed., § 163.)

(See, also, 18 Cyc. 510; 11 A. & E. Encycl. of L. 1084.)

The plaintiffs in error urge that at all events the allowance of a claim against an executor is not even admissible in evidence in any other state than that in which it was made, because such order has no extraterritorial force whatever. This contention is based upon a line of decisions holding that a judgment against an administrator is of no effect against the representative of the estate of the same decedent who derives his authority from some other sovereignty. (See *Braithwaite v. Harvey*, 14 Mont. 208, and cases cited in a note thereto in 27 L. R. A. 101.) The reason for that rule is that there is no privity between the different administrators. Each has to do only with the property of the estate within his own jurisdiction, and a judgment against him binds only such property. Except by legislative permission he can neither sue nor defend in his representative capacity in the courts of another state. But our statute (Gen. Stat. 1901, § 3009) not only removes this disability, but also in express terms (Gen. Stat. 1901, § 2950) authorizes a foreign executor or administrator, where none has been appointed in Kansas, to sell real estate of the decedent situated in this state for the payment of debts in the same manner as though he had been appointed here. This provision establishes a connection between the foreign administration and the domestic proceedings. It makes the real estate in this jurisdiction, so far as necessary for the payment of debts, assets of the estate as administered elsewhere.

It places the order of the foreign court allowing a claim against the administrator upon the same footing with a similar order made in this state. Neither is conclusive against the heirs, but either is admissible in evidence against them.

What is really but a phase of the contention already discussed is the claim of the plaintiffs in error that the demands against the William E. Jones estate were barred because they were not exhibited and established within three years after the qualification of the executor. The statute does not require their establishment within that time—merely that a proceeding to that end shall be begun. (*Clifton v. Meuser*, 79 Kan. 655.) The evidence does not show when notice of the character of the demands and of their presentation for the consideration and action of the court was served upon the executor, but it must be presumed from their allowance that this step was taken within due time, and nothing was offered to rebut this presumption.

Price, the purchaser of the land, stands upon no better footing than the devisees. He knew that his grantors acquired title through the will of William E. Jones, and was presumed to know that under the law the property might be charged with the payment of any indebtedness of Jones owing to a creditor who had not lost his remedy by inaction. He had no right to regard the mere lapse of time as proof that no such indebtedness existed. He was bound at least to inquire whether a settlement of the estate had been had, and a pursuit of that inquiry would necessarily have advised him of all the facts.

The judgment is affirmed.

GRAVES, J., not sitting.