No. 19,486.

MAGGIE McGUIRE, v. RACHEL A. DAVIS and JOSEPH DAVIS, *Appellants;* MARY J. CULBERTSON, Interpleader (HARLAN TAYLOR, as Administrator, etc., Interpleader, *Appellee*).

### SYLLABUS BY THE COURT.

1. REFORMATION OF DEED — *To Show Life Estate — Death of Grantor Pending Action—Administrator May Prosecute Claim.* Where a grantor sues to have a deed reformed so as to show the reservation of a life interest and a stipulation charging the land with the payment of indebtedness owed by her at the time of her death, and dies before judgment is rendered, the administrator of her estate may be made a party and prosecute the claim for the benefit of its creditors, where no other property is available for their payment.

2. SAME. Such a proceeding may be prosecuted by the administrator, although it was instituted by the intervention of the grantor in a partition action between the grantees, and the land had been sold prior to her death, the proceeds being held in court to await the determination of the controversy.

3. SAME—*Pleading of Administrator—Not Demurrable.* Where in such case the pleading of the administrator sets out that claims are asserted against the estate, and that its assets are insufficient to meet them, it is not rendered demurrable by the fact that it shows the demands have not been allowed or formally exhibited.

4. SAME—*Decree of Reformation—Justified by the Evidence.* A decree of reformation held to be justified, upon the ground that there was evidence that the grantor believed the deed to be so worded as to make her maintenance for life a charge upon the land, and that the grantees accepted it upon that understanding.

Appeal from Allen district court; OSCAR FOUST, judge. Opinion filed May 8, 1915. Affirmed.

*C. S. Ritter,* of Iola, for the appellants.

*Travis Morse,* and *G. E. Pees,* both of Iola, for the appellee.

The opinion of the court was delivered by

MASON, J.: Mary J. Culbertson, an elderly unmarried woman, was the owner of 180 acres of land in Allen county. On November 20, 1909, she executed a warranty deed, in the usual form, without exception or reservation, purporting to convey 160 acres of it to her two nieces, Maggie McGuire and Rachel Davis, sisters. The intention had been to include the entire property, and to remedy the oversight a second deed was made, of like purport, for the other twenty acres. A few days later the grantor caused the deeds to be recorded, and during the next month the grantees paid her the recited consideration of one dollar each, and received the deeds. On September 12, 1911, Maggie McGuire began an action against Rachel Davis for the

partition of the property. Mary J. Culbertson inter-
pleaded, and on April 14, 1912, filed a cross-petition
alleging a mistake in the drafting of the deeds executed
by her, and asking that they be reformed so as to ex-
press the real intention of the parties, which was that
the income of the property during her life should be
reserved to her, that any further expense necessarily
incurred for her support should be a lien upon it and
that it should be charged with the payment of all her
just debts at the time of her death. On July 15, a de-
cree for partition was entered, providing that in case
of sale the proceeds should be paid into court, to stand
as the land itself, and to be subject to disposition in
accordance with the decision of the court upon the
issues remaining to be tried.

It was found that the land could not be divided, and
on October 15, 1912, it was sold to Rachel Davis and her
husband for $5405. Fifteen hundred dollars of the
price was retained in court to cover (among other
matters) such part of it as Mary J. Culbertson might
be found entitled to. Mary J. Culbertson died January
7, 1913. An administrator was appointed, who by leave
of the court filed an interplea, setting out that various
persons were making or were about to make claims
against the estate for support of the decedent, es-
timated at $1000; that no property was available to
meet them excepting her interest in the land; he asked
the reformation of the deeds on the grounds already
stated, and that the proceeds of the sale still in the
control of the court should be subjected to the payment
of such claims. Rachel Davis joined issues with the
administrator. The court found in his favor and ren-
dered judgment accordingly. She appeals.

The appellant contends that the administrator can
not in any event maintain a proceeding of this char-
acter. Probably the larger number of courts that have
passed on the question have held that an administrator
can not recover for the benefit of the creditors of the

estate personal property fraudulently conveyed by the decedent to avoid the payment of his debts.   (Note, 135 Am. St. Rep. 330.)   But the many decisions to the contrary are supported by cogent reasoning.   (Note, 135 Am. St. Rep. 332.)   This court has adopted the majority rule (*Crawford's Adm'r v. Lehr*, 20 Kan. 509), but upon grounds depending in part at least upon the statute reading:

"The real estate liable to be sold as aforesaid [by the administrator to pay debts] shall include all that the deceased may have conveyed with intent to defraud his creditors, and all other rights and interests in lands and tenements not exempt by law."   (Gen. Stat. 1909, § 3551.)

In the case cited the court said:

"It might be inferred from this statute, that the administrator might in some cases recover real estate or real property which had previously been conveyed by the deceased to defraud his creditors.   But as there is no similar statute applicable to personal property, no such inference can be drawn from the statutes with reference to personal property.   Indeed, the inference from the statutes might be against the authority of the administrator to recover personal property conveyed by the deceased to defraud his creditors; for, *expressio unius, est exclusio alterius*."   (p. 511.)

Of the same statute it was said in a later case:

"It is provided that real estate which the deceased may have conveyed with intent to defraud his creditors is liable to be sold as part of the estate.   The statute does not expresssly provide who may institute proceedings to set aside fraudulent conveyances so made. Doubtless it is within the power of the executor or administrator to bring a proceeding in equity for that purpose."   (*Barker v. Battey*, 62 Kan. 584, 585, 64 Pac. 75.)

In view of these expressions, the right of an administrator seems clear to maintain an action to set aside, for the benefit of creditors, lands fraudulently conveyed by the decedent.   (See, also, 11 A. & E. Encycl.

of L. 979; 18 Cyc. 692; *McLane, administrator, v. Johnson et al.,* 43 Vt. 48, 61, 62; Note, 1 Am. Lead. Cas. 43.) An action to establish the interest of the decedent in land his title to which is doubtful stands upon a better footing. Thus in denying the right of an administrator to sue to set aside a fraudulent conveyance it was said:

"We affirm the right of an administrator in certain circumstances to invoke the aid of chancery to remove clouds from title and obstructions to a fair sale of his intestate's land." (*Blake v. Blake,* 53 Miss. 182, 193.)

(See, also, 32 Cyc. 1334, subdiv. 2.)

The fact that in the present instance the claims against the estate had not been proved or formally exhibited is not a ground for denying jurisdiction. (*Randel v. Randel,* 64 Kan. 254, 67 Pac. 837; *Thomas v. Williams,* 80 Kan. 632, 636, 103 Pac. 772; 11 A. & E. Encycl. of L. 1083.) If no indebtedness is established against the estate the appellant is not injured. Nor is the fact that here the land has already been sold and converted into money a bar to the maintenance of the action. The proceeds of the sale retain the character of the property sold. They are subject to the same charges as though they were still real estate. (See 30 Cyc. 290, 293, 294.) The circumstance that the property is already in the form of money dispenses with the need of any further sale, so that the ordinary machinery for applying it to the payment of the indebtedness for which it is liable is unnecessary and inapplicable. The present proceeding gives the parties concerned the fullest opportunity to have their objections heard and determined. The fact that the grantor of the deeds in her lifetime intervened in the partition suit and asked their reformation, and that her action was still pending at the time of her death, makes the prosecution of the claim by the administrator especially appropriate. The real successors in interest of the decedent, with respect to the matter in contro-

versy, are her creditors, represented by the administrator.

By various assignments of error the appellant raises the question of the sufficiency of the evidence to support the findings and judgment of the court.   There is a serious difficulty in the way of determining this matter.   Only a part of the evidence has been transcribed. The appellant was privileged to omit from her abstract any evidence regarded by her as not pertinent to the questions presented.   But it was incumbent upon her to have all the oral testimony preserved in a transcript, in order to provide an authentic source to which the appellee might go for whatever additional evidence he wished to bring before the court in a counter-abstract. (*Readicker v. Denning*, 86 Kan. 79, 119 Pac. 533.) We conclude, however, that the judgment can be upheld on the basis of the evidence already before us.

A notary public testified in substance that he prepared the deeds in question at the request of Mary J. Culbertson and Maggie McGuire; that after the first deed had been executed he was given to understand that the intention was to reserve a life interest; that he suggested that this could be accomplished by drawing the second deed in the same terms as the first, and holding both from record until the grantor's death; and that he understood this suggestion was to be acted on.   Mary J. Culbertson's deposition was taken.   She testified that after the deeds had been recorded she told Rachel Davis about them, adding that her intention was that she and the grantees were to make their home on the lands, and that she was to "have her living out of said lands as long as she lived, and when she died, her debts were to be paid and the balance left at such time was to be the property of plaintiff and defendant" (Rachel Davis and Maggie McGuire, the grantees). There was room for the inference that Mary J. Culbertson believed that the deeds were so drawn as to carry out this intent, that she made this known to Rachel Davis, who accepted them with that understanding.   A

lease was executed from Mary J. Culbertson to Joseph Davis for the land in controversy for a share of the crop, and he and his wife (Rachel Davis) moved upon it. Mary J. Culbertson and Maggie McGuire lived with them, the former receiving the agreed rent until her death. Rachel Davis testified that they thought this arrangement was no more than fair, and made it because it was asked by Mary J. Culbertson, who did not assert any claim as a matter of right.

The court found that about August 20, 1911, an altercation occurred between Rachel Davis and Maggie McGuire which so agitated Mary J. Culbertson, who was much enfeebled, that by the advice of her physician she was removed to the home of their sister, Kate Hurley, with whom she resided until her death. Kate Hurley presented a demand against the estate for $640 for services in caring for her, and the question whether this claim shall be paid out of the proceeds of the land is the chief matter in dispute.

Prior to January 21, 1911, Maggie McGuire and Rachel Davis brought an action to quiet their title to this land. On that date Mary J. Culbertson, who was not a party, gave testimony in their behalf by deposition, in which she told of executing these deeds, and made no mention of any mistake. The appellant argues that this constituted a ratification of them as they stood. It does not appear, however, that any question of their form or contents was involved.

We think the decree of reformation was justified upon the ground that there was some evidence that the grantor believed the deeds to have been so drawn as to make her maintenance for life a charge upon the property, and that the grantees accepted them knowing of this belief, and acting upon that understanding.

The judgment is affirmed.