No. 35,716

CHARLES C. CALKIN, Administrator with the Will Annexed of the Estate of Charles Hudson, Deceased, *Appellee*, v. DARWIN HUDSON, Administrator with the Will Annexed of the Estate of Lavina Hudson, Deceased, et al., *Appellants*.

(133 P. 2d 177)

Opinion filed January 23, 1943.

*Joe T. Rogers*, of Wichita, argued the cause, and *Roy L. Rogers*, of Wichita, was on the briefs for the appellants.

*Charles C. Calkin*, of Kingman, argued the cause, and *Oren Wheat* and *Raymond E. Eggleston*, both of Medicine Lodge, were on the briefs for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action by the administrator c. t. a. of the estate of Charles Hudson, late of Kingman county, to obtain

a declaratory judgment touching his right to sell certain lands in Barber county to raise funds to pay legacies provided for by the will of the testator. The lands involved were part of the estate of Charles at his death in 1916.

The legal question touching the propriety of the action and the correctness of the trial court's decision turns upon facts about which there is no material dispute but which must be stated at length. Preliminary to such statement, some antecedent background to this lawsuit will be helpful:

The late William T. Hudson of Kingman county died testate in 1907. He left four sons, Charles, Frank, Ben and William, and four daughters, Kate, Maude, Nell, and Ethel who was then about six years old. Owing to the ill-health of Charles, the eldest son, the testator named his next son, Frank, as executor. The terms of that will are of no present concern except a provision that the estate should be kept intact and operated and managed until Ethel should attain the age of eighteen years—a matter of twelve years ahead.

Frank qualified as executor of his father's estate and so continued until 1918, by which time all four daughters had married. In that year, either on May 25 or November 28 (both dates are given in the record), all the brothers and sisters and their spouses entered into a family settlement of their respective interests in the estate of their father, William T. Hudson, in which for specified considerations, part payments of which were acknowledged, all the interests of the four sisters and of their brother Ben, in the estate of their father, were sold and conveyed to their brother Frank Hudson. Whether the approval of the probate court to that family settlement was given does not appear. However, in the lax state of the law at that time that court's approval was unnecessary, since apparently no third parties were interested in the estate. (*Hirt v. Bucklin State Bank,* 153 Kan. 194, syl. ¶ 4, 109 P. 2d 171.)

Coming now to the matters of immediate concern, it appears that Charles Hudson died testate on December 19, 1916. By his will, he appointed his brother Frank and another as executors of his will. The will was offered for probate on December 27, 1916, and probated January 16, 1917. About the same time Frank Hudson qualified as executor and the other named executor eventually dropped out. Three provisions of the will of Charles, in part, read:

"I . . . do hereby authorize [my executors] to do whatsoever things are necessary in and about the premises to carry out the provisions of this will

and I do hereby authorize them to sell enough of the estate, real and personal, to pay the bequests herein made but no real estate shall be sold until the personal property is exhausted.

. . . . . . . . . . . . . . . .

"Fourth: . . . I do hereby give, will and bequeath to my four sisters, Mrs. Kate Clark, Miss Maude Hudson, Mrs. Nellie Bolin and Miss Ethel Hudson, the sum of $500 each to be paid by my executors out of my estate.

"Fifth: I hereby give, will and bequeath to my three brothers, Frank Hudson, Ben Hudson and William Hudson, to be divided equally among them, share and share alike, all the rest and residue of my estate, real and personal, to have and to hold the same unto them and their heirs and assigns forever in fee simple."

In 1921 the youngest sister, Ethel, applied to the probate court for a citation directed to Frank Hudson, executor of the estate of Charles, to show cause why that estate was not settled and closed, and in that citation the fact was mentioned that a legacy of $500 to each of the sisters was devised by the will of Charles. The executor made some response to the citation, alleging that Ethel (and her sisters) had been paid their legacies. The court set a time for a hearing. If that hearing was held and any decision or order made pursuant thereto the records of the probate court do not show it; and neither party here concerned has made any effort to have that record restored or a *nunc pro tunc* order entered as good practice would require. (*Gaston v. Collins,* 146 Kan. 449, 455, 72 P. 2d 84.)

Frank Hudson, executor, took possession of the Barber county lands, either as executor or as one of the residuary devisees under the fifth clause of his brother's will, and thereafter he managed and disposed of them as follows: The lands were subject to a mortgage of $3,000 given by Charles in 1915. That mortgage was released in 1920, but not recorded until 1928.

In 1926 Frank received a quitclaim deed to the interest of his brother William. Ben Hudson died in 1926, and Frank Hudson acquired Ben's interest in the Barber county lands in a partition suit against Ben's heirs.

In 1934 Frank Hudson and his wife Lavina Hudson were divorced, and Frank by quitclaim deed conveyed 240 acres of the land to her. To correct some defect in that deed he and his next wife executed to Lavina a second quitclaim deed in 1935, and about the same time he executed to Joe T. Rogers a quitclaim deed to the remaining 80 acres of the Barber county land.

On April 1, 1938, Mrs. Kate Hudson Clark executed an acknowl-

edgment that she had received from the personal representatives of the estate of Charles the sum of $500 in full satisfaction and discharge of the special bequest and legacy in her behalf under her brother's will.

On April 13, 1938, Mrs. Nellie Hudson Bolin executed and verified a disclaimer and release which recited that while she had never been paid her legacy, she did discharge her brother *William* of any liability therefor, but she reserved all the rights she might have against all other persons and property for its satisfaction.

On August 4, 1939, three of the Hudson sisters, Maude, Nell and Ethel, filed in the probate court their petition for the removal of the executor, Frank Hudson, and for the appointment of an administrator *de bonis non*, alleging that they had never been paid the legacies provided for them in the will of their brother Charles; that the executor had never made but two annual accountings of his executorship, to wit, on February 8, 1918, and January 6, 1921; that on May 12, 1939, at the request of the petitioners, a citation had been issued by the court to Frank Hudson, executor, which stated that he had failed to close the estate or to render an accounting as required by law, and that he had refused to pay to petitioners their legacies as by the will directed.

On May 22, 1939, Frank Hudson appeared in response to this citation and answered that all bequests had been satisfied in full, but he had no receipts or other documents to support his answer except the one given by the fourth sister, Mrs. Kate Hudson Clark.

On August 12, 1939, Frank Hudson resigned as executor. His resignation was accepted and he was directed to file his final accounting and settlement, which he did on August 16. That final report is too long for inclusion herein. If that report was true, however deficient it undoubtedly was from a legal standpoint, it was not a discreditable showing on his behalf as an honest man and as a solicitous elder brother charged with the practical management of his dead father's and his dead brother's estates. He admitted that he had not kept separate the estates of his father and brother; that both estates had been heavily encumbered when he took charge of them, that he had managed them for many years as if both estates were the property of the entire family, and that he had gradually paid off the debts of both estates and greatly enhanced their value; and that in the family settlement of 1918, that contract of settlement included not only the interests of the several members

of the family in the estate of their father but also in the estate of their brother, and in such settlement his sisters did receive the amounts of their several bequests and a great deal more—about $4,000 each. His report continued—

"That your executor realizes that such proceedings was not in keeping with his duties as executor, but was in the nature of a family settlement in which all members of the family participated and all members of said family agreed to such disposition."

The executor also pleaded an oral agreement between himself and the other members of the family that he should pay the mortgage on the Barber county land and that the property should belong to him. He also pleaded the statute of limitations and estoppel.

The three petitioning sisters filed objections to the final report and traversed its material allegations, and denied that the family settlement of 1918 pertaining to the estate of their father had anything to do with the estate of their brother Charles.

A hearing on the issues raised by the citation, the answer of the executor, and the objections to his final report was held on October 11, 1939. Evidence was adduced by the parties; the probate court disapproved the report. Later, on January 13, 1940, the court found that the executor had failed to file annual accountings of the estate of Charles Hudson and had failed to render a proper final account, and had failed to account for the properties of that estate which had come into his hands, and had not paid the $500 bequests in the will of Charles in favor of his petitioning sisters.

The probate court also found that the executor's final report showed that no money or other assets of the estate remained; that no family settlement of the estate had been had; that the court costs of the estate had never been paid and were still due and owing; that the administration of the estate had been pending since 1917 and that there had been unreasonable delay in effecting final settlement and closing of the estate.

"It is further ordered, by the court, that there is due and owing to Nell Bolin, Maude Bissantz and Ethel Kingsley, beneficiaries under the terms of the last will and testament of Charles Hudson, deceased, the sum of $500 each, together with interest thereon at the rate of six percent per annum from the 22d day of January, 1919, until paid. That said bequests have never been paid and should be paid by said estate."

At the same time the probate court removed Frank Hudson as executor of the estate of Charles Hudson, and appointed Charles C. Calkin as administrator *de bonis non*. Calkin qualified and on his

application the probate court ordered him to take possession of the Barber county lands, and to institute any necessary proceedings in a court of competent jurisdiction to obtain possession and to obtain whatever other judicial aid he might require to enable him to perform his duties as administrator with the will annexed.

Armed with such authority from the probate court, Calkin, administrator c. t. a., filed the action in the district court of Barber county, the result of which forms the basis of this appeal. In his second amended petition he alleged the pertinent facts which we have summarized above, and prayed that his title be quieted against the defendants named in the title, and that he be adjudged to have title to the Barber county lands for the purpose of selling them to pay the specific legacies under the will of Charles Hudson, and to satisfy administration expenses and costs.

The defendants demurred to this second amended petition on the ground that the court had no jurisdiction, that plaintiff had no legal capacity to sue; that the petition did not state a cause of action, and that the purported action, if any ever existed, was barred by the statute of limitations.

This demurrer was overruled, and the defendants filed separate answers, that of defendant, Darwin Hudson, administrator c. t. a. of the estate of Lavina Hudson, deceased, and for himself individually, with exhibits attached, including the contract of family settlement dated May 18, 1918, (the answer says November 25, 1918) extends to twenty pages of the abstract, but its material allegations are sufficiently outlined in our statement above. It concluded with a prayer that plaintiff take nothing by his action and that defendant's title be quieted.

Wallace Hudson, defendant, filed an answer joining in the one filed by Darwin Hudson. Joe T. Rogers, defendant, adopted the answer of Darwin Hudson, and added that he had purchased 80 acres of the land in controversy for a valuable consideration and without notice, actual or constructive, of any claim on the part of the legatees of the will of Charles Hudson or of the administrator. Emma F. Baker, defendant, answered that she held a mortgage in the sum of $500 on the land which she had taken in good faith and without notice of any claim on the part of the legatees or the plaintiff. She also joined in the answer of Darwin Hudson, and prayed that her rights as mortgagee be protected.

One Jo Maxine Hudson was permitted to intervene and she filed

an answer in which she adopted Darwin Hudson's answer except where it might conflict with her special interest in the litigation which consisted of a certain unsatisfied judgment which she held against Darwin Hudson, recorded in Barber county, and claimed to be a first and prior lien on the lands in controversy.

The plaintiff filed a reply with exhibits including most of the pertinent files and orders of the probate court, and extending to twenty-five pages of the abstract, but the material matters of which are sufficiently summarized above and need not be restated.

On these issues the cause was tried by the court. The plaintiff administrator testified to some matters of no importance. The pleadings chiefly raised questions of law, but the parties did join in a 7-page stipulation of facts which they or either of them deemed important. The stipulation included recitals of various transfers and conveyances of interests in the land in controversy since Frank Hudson qualified as executor in January, 1917.

The trial court made findings of fact and conclusions of law, some of which, in part, read:

### "Findings of Fact

"2. Charles Hudson died in the latter part of the year 1916, and his estate has been in process of administration in the probate court of Kingman county, Kansas, since January, 1917. That F. B. Hudson was the duly qualified and acting executor of his estate from its inception until his removal on January 13, 1940; . . . There were only two annual executor's reports, made by F. B. Hudson, to the probate court, one in February, 1918, and the other in January, 1921. The assets of this estate were by the said Frank Hudson commingled with the assets of the estate of William T. Hudson, of which estate the said F. B. Hudson was also executor.

"3. From the findings and judgment of the probate court, and from the evidence herein, the court finds that the legacies of Nell Bolin, Maude Bissantz and Ethel Kingsley, under the last will and testament of Charles Hudson, deceased, have not been paid, and that the same together with interest are due and owing said legatees from said estate.

"4. That the said Charles Hudson died seized and possessed of the real estate involved herein. That following his death, the executors went into possession thereof, collected rent and paid interest and taxes thereon; said F. B. Hudson acquired the interest of William Hudson in 1926, and the interest of Ben Hudson, through partition proceedings in 1928, as shown by the stipulation. The said F. B. Hudson, as executor and devisee, and the defendants herein, as successors to the interests of the devisees, have been in possession of said real estate since the death of said Charles Hudson.

"5. That Joe T. Rogers purchased the north half of the southeast quarter of section 20, township 31, south, range 10 west, from the said F. B. Hudson, and paid a valuable consideration therefor in October, 1935. He had been

rather intimate with, and [had] known a great deal about, Frank Hudson and his affairs for a number of years, and knew that Frank was the executor of Charles Hudson's estate.

"6. The legatees named in the fourth paragraph of said will made demands on F. B. Hudson at various times through the years, for the payment of their legacies, and the legacy of Kate Clark was . . . receipted for in 1938.

"9. That the defendants are in possession of said real estate, claiming to own the same under and by virtue of the conveyance stipulated to herein.

"Conclusions of Law

"1. That the findings and judgment of the probate court of Kingman county, Kansas, made and entered on the 13th day of January, 1940, in the matter of the estate of Charles Hudson, deceased, conclusively determines the nonpayment of the legacies of $500 each to Nell Bolin, Maude Bissantz and Ethel Kingsley, and the liability of said estate at said time, to each of said legatees, in the amount of $500 with six percent interest per annum, from January 22, 1919, until paid, and said legacies, not having been paid since said time, are now due and owing said legatees, from said estate as found by said probate court.

"2. That the estate of the said Charles Hudson having never been closed, and still being in the process of settlement, and all the personal property and personal effects of said estate having been expended, lost or dissipated, prior to the payment of said legacies, the real estate assets of said estate became liable, and subject to sale for the payment of said legacies.

. . . . . . . . . . . . . .

"4. That the defendants herein having acquired their respective interests in said real estate through Frank Hudson, whose only interest therein is by virtue of the last will and testament of Charles Hudson, deceased, of which, he, the said Frank Hudson, was executor, are estopped to deny the plaintiff's statutory and last will and testament rights in and to said real estate.

"5. That the plaintiff, Chas. C. Calkin, as administrator *de bonis non*, with will annexed of the estate of Charles Hudson, deceased, is entitled to take and to sell so much of the real estate described in plaintiff's petition as may be necessary to satisfy the costs and expenses of said sale, said legacies and all costs and expenses incurred in the administration of said estate.

"6. That the defendants and all persons claiming by, through or under them should be barred of all right, title and interest in and to such of said real estate as may be so sold by said administrator."

On these conclusions of fact and of law, the trial court adjudged that plaintiff could proceed to sell the Barber county lands as ordered by the probate court to raise funds to pay the bequests in favor of the three Hudson sisters, Maude, Nellie and Ethel, and to pay the costs of administration of the Charles Hudson estate as the probate court might direct, and further adjudged that plaintiff's title be quieted against all the impleaded defendants and barred them of all interest therein, and that the purchasers of the property

on its sale under order of the probate court would be vested with title in fee simple and entitled to immediate possession.

The usual post-trial motions were filed, presented and overruled, and defendants have appealed, raising the same questions urged in their demurrer to plaintiff's petition set out above.

On the first question raised in this appeal—that the administrator was not a proper party to bring this action, this point is foreclosed by a specific provision of statute G. S. 1935, 22-834, which has been on the statute book since 1868. It provides:

"When a testator shall have given any legacy by will that is effectual to pass or charge real estate, and his personal estate shall be insufficient to pay such legacy, together with his debts and the costs of administration, the executor or administrator with the will annexed may be ordered to sell his real estate for that purpose, in the same manner and upon the same terms and conditions as are prescribed herein for the payment of debts."

In *McGuire v. Davis*, 95 Kan. 486, 148 Pac. 755, where an elderly woman had conveyed lands to two nieces and they instituted proceedings in partition, their grantor intervened and died before the litigation ended. Her administrator obtained leave to interplead. On appeal it was contended that the administrator had no concern in the matter, but this court held otherwise, quoting from the supreme court of Mississippi, thus:

" 'We affirm the right of an administrator in certain circumstances to invoke the aid of chancery to remove clouds from title and obstructions to a fair sale of his intestate's land.' (*Blake v. Blake*, 53 Miss. 182, 193.)" (p. 490.)

The civil code likewise has a provision which authorizes an administrator to bring an action like the one at bar. G. S. 1935, 60-403, in part, reads:

"An . . . administrator . . . may bring an action without joining with him the person [here the legatees] for whose benefit it is prosecuted. . . ."

In *Horton v. Jones*, 110 Kan. 540, 204 Pac. 1001, this court held that under this provision of the civil code the administrator was a proper party to bring an action to subject the assets of an estate to the satisfaction of unpaid claims against the estate although his interest was merely nominal. And in *Richards v. Tiernan*, 150 Kan. 116, 91 P. 2d 22, an administrator *de bonis non* brought an action to recover possession of a certificate of corporate stock which had gotten into the hands of some of the heirs of its intestate owner, to the prejudice of other heirs. While the action was disposed of on other grounds, the authority of the administrator to bring the action

was one of the sharply contested points in the lawsuit. In disposing of it we said:

. "We have reviewed the authorities cited by plaintiff on the general proposition that an administrator is the proper person to recover the assets of a decedent's estate. That such is the law cannot be doubted. He is not only the proper person to do so, but that is his duty. (*Farmers State Bank v. Mitchell,* 143 Kan. 286, 292, 55 P. 2d 423.)" (p. 120.)

See, also, *Goebel v. Anderson,* 123 Kan. 211-213, 255 Pac. 77.

It is next contended that the petition did not state a cause of action. No mere formal defects were urged against the petition, and but for the time element and its incidents to which we shall presently give attention we think the petition was sufficient, and the citations already cited support the trial court's ruling thereon.

Turning now to the principal question presented by this record—the long delay in calling the executor to account for his failure to pay the legacies. Perhaps the ordinary 5-year provisions of the statute of limitations (G. S. 1935, 60-306, *fifth* and *sixth* clauses) may not apply, although it is not easy to see why the *fifth* clause would not govern. It reads, in part:

"Civil actions, other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards: . . .

"*Fifth.* An action upon the official bond or undertaking of an executor, administrator, . . . within five years. . . ."

Since the probate and district courts found that the legacies were due on January 22, 1919, so as to bear interest thereafter until paid, the legatees could have brought matters to a head by timely action against the executor and his official bondsmen at any reasonable time thereafter. True, this court has held that the time limit for bringing proceedings in the probate court to enforce rights in estates in process of settlement in the probate court is not governed by the ordinary provisions of the statute of limitations (*Thomas v. Williams,* 80 Kan. 632, 634, 103 Pac. 772); but what shall we say as to defendant's plea of laches against the maintenance of these proceedings in the probate court and the related action in the district court? Why did the probate and district courts fix the time at January 22, 1919, when the legacies should begin to bear interest? Clearly because the pertinent statute contemplated that in the absence of special circumstances which would justify the probate court in extending the time to close the estate, the executor

was required to make his final report within two years and thirty days after his appointment and qualification. (R. S. 1923, 22-907.)

Some abortive proceedings to collect Ethel's legacy were begun in 1920 but came to naught. The trial court did find, however, that throughout the years at various times since January, 1919, the petitioning sisters had made demands on the executor for the payment of their legacies. But they took no effective steps to realize on their legacies until August 4, 1939, when they filed their petition for the removal of the executor—20 years, 6 months and 12 days after the statutory time for closing the estate.

During the long years when the legatees were making occasional demands on the executor for the payment of their legacies the old probate code (R. S. 1923, 22-1003) expressly gave them the right to maintain an action to recover their legacies, since the executor or administrator neglected to pay them as demanded.

So, too, the provisions of R. S. 1923, 22-922, were available to the legatees at any time after January 22, 1919, to apply to the probate court for an order directing the executor to pay the legacies; and in the event the personal estate was insufficient to pay them, to have the real estate of the testator subjected to their satisfaction, substantially as the petitioning legatees eventually did do in this case—after twenty years!

Where the statute of limitations is not an absolute bar to the enforcement of stale demands, the doctrine of laches as a principle of equity may frequently be invoked with equal effect. Laches exists when there is undue delay in the assertion of a legal right before a tribunal competent to enforce it. Lapse of time alone does not constitute laches (*Dusenbery v. Bidwell,* 86 Kan. 666, 121 Pac. 1098; *Osincup v. Henthorn,* 89 Kan. 58, 130 Pac. 652; *Spradling v. Hawk,* 133 Kan. 545, 1 P. 2d 268); but if such delay has misled other parties to their prejudice, the bar of laches may be invoked. (*Commissioners of Morris Co. v. Hinchman,* 31 Kan. 729, 736, 3 Pac. 504; *City of Leavenworth v. Douglass,* 59 Kan. 416, 53 Pac. 123; *Thompson v. Millikin,* 93 Kan. 72, 75, 143 Pac. 430; *Kirsch v. City of Abilene,* 120 Kan. 749, 244 Pac. 1054; *Malone v. Young,* 148 Kan. 250, 260-263, 81 P. 2d 23; *Drenning v. City of Topeka,* 148 Kan. 366, 81 P. 2d 720.)

The cases just cited are not particularly analogous to the one at bar. We cite them merely as illustrative of the wide variety of circumstances where and where not the equitable principle of laches has been applied. In the case at bar it cannot be denied that the

interests of third parties have attached to the Barber county land during the long interval when the legatees knowingly refrained from taking some effective action to enforce their rights. Lavina Hudson is dead and her interest has passed to her heirs. Joe Rogers acquired his interest for a substantial consideration. Emma F. Baker holds a mortgagee's interest in the property for a loan of money made in good faith. Jo Maxine Hudson has what appears to be a valid judgment lien on the land. In good conscience these interests cannot be swept aside in deference to the stale demands of legatees who waited twenty years before asserting them in court. True, in a technical sense it may be said that by diligent inquiry all these third parties might have learned that there was at least a possibility that the bequests of the will of Charles Hudson, conditionally a charge upon the Barber county lands, had not been paid and that they might be subjected to their satisfaction, but the doctrine of laches is not limited in its application to the protection of parties who themselves have perfect title or superior title, but to protect them against persons who have unduly delayed to vindicate their adverse rights by appropriate proceedings.

In *Edwards v. Moore*, 143 Kan. 447, 452-453, 54 P. 2d 933, where proceedings were commenced in 1929 to enforce a lien on land created by a will probated in 1917, this court held that the action was barred by laches. In our opinion attention was called to the plight of third parties whose interests would be affected if the dilatory executor were permitted to prosecute his belated action. It was said:

"Plaintiff may or may not have a nice point about whether mortgagees and purchasers ought to have done something more than they did do in finding out whether they could safely deal with title to the land. . . . The question of diligence in exploring a field of this character is always relative. . . . The mortgagees and purchasers never would have been exposed to danger of failing to do something which a court might ultimately say they should have done, if plaintiff had done what the law required him to do. . . . Sleeping on known rights opens the way to speculation in stale and doubtful claims, to disturbance of titles, and to the breeding of turmoil where peace and repose ought to prevail.

.    .    .    .    .    .    .    .    .    .    .    .

"Laches takes into account all the consequences which may result from delay. . . .

"Whether laches bars action depends on the special circumstances of the case. While delay under certain typical classes of circumstances is recognized as sufficient to raise the bar, any catalogue of circumstances would be illustrative only and not definitive." (pp. 452, 453.)

This court holds that the principle of laches clearly applies to the case at bar. The judgment is therefore reversed and the cause remanded with instructions to render judgment for defendants.

PARKER, J., not participating.