CASE 98—SUIT BY WOODSON HARRIS AGAINST JOHN E. GREENLEAF, &C.,
FOR SPECIFIC PERFORMANCE IN SALE OF LAND.—MARCH 8.

# Harris v. Greenleaf, &c.

### APPEAL FROM MADISON CIRCUIT COURT.

FROM A JUDGMENT SUSTAINING A DEMURRER TO AND DISMISSING THE
PETITION, PLAINTIFF APPEALS. REVERSED.

VENDOR AND PURCHASER—SPECIFIC PERFORMANCE—TENDER—NECES-
SITY—EQUITABLE CONSIDERATIONS—PROVISIONS FOR FORFEITURE—
DELAY—ENHANCEMENT IN VALUE.

Held: 1. Where a vendee suing for specific performance avers that
he is ready and willing to do all acts required of him in the
execution of the contract according to its terms, it may be en-
forced without an actual legal tender, other equitable require-
ments being satisfied.,

2. A petition for specific performance, alleging that while plaintiff
was in possession of the land he made a payment to defend-
ant, who agreed that plaintiff should have a prolongation of
time to pay for the land, and that afterwards defendant arbi-
trarily took forcible possession, claiming that plaintiff had no
rights in the premises, and afterwards refused to accept pay-
ment, and that plaintiff was ready and willing to do equity
and pay defendant what was justly due after deducting just
charges for defendant's use of the premises, while not a good
allegation of legal tender, showed equitable grounds excus-
ing the same.

3. A provision in a contract for the sale of land for forfeiture by
the vendee of all his rights under the contract, including his
possession, on non-payment of the full purchase price at the
time indicated, was merely a form of security.

4. A material alteration in conditions between the making of a
land contract and delayed action in enforcing it, making it
unjust to enforce it against the resisting party, is cause for its
non-enforcement, but a mere increase in value before enforce-
ment is sought, but after part performance by the vendee, is not

sufficient, where his delay in offering to pay the balance has not
been unreasonable, nor in bad faith.

BURNAM & MOBERLY to appellant.

Harris, an ignorant negro, bought, in January, 1898, three
lots of Greenleaf, in an addition to Richmond at the price of
seventy-five dollars, and he and his two children gave' their
joint note for the price, for which Greenleaf gave his title bond
claiming to be the exclusive owner. In March, 1899, Greenleaf
brought suit on his note and for the enforcement of his lien.

Pending this suit Evans comes into this case as a partner
of Greenleaf, and gets Harris to execute a new note for $100
for the lots, and has drawn up a new contract of sale for
which there was no consideration, Harris still being in pos-
session under his original purchase. In this new contract a
penalty was inserted that if the $100 note was not paid at
maturity the property should be surrendered. In January, 1900,
Harris paid Greenleaf ten dollars, taking a receipt therefor
to be credited on his note, and some time thereafter tendered
the balance of the money, which was refused, and Greenleaf
agreed to give Harris more time for payment. Evans, dis-
regarding this verbal agreement, forcibly took possession of
the lots, and in September, 1903, Harris filed this suit asking
for a specific enforcement of his original contract. The court
sustained a demurrer to his petition and he appeals. We claim
that the original tender by Harris of the balance due on the
seventy-five dollar note to Greenleaf is a sufficient tender in
equity to authorize a recovery of the lots, subject to a lien
for such balance as is now due. The lots are now worth
$375. Am. & Eng. Ency. of Law (1st ed.), vol. 22, p. 1036;
Griffin, &c. v. Coffey, &c., 9 B. M., 452; Martin v. Martin, 16
B. M., 8.

J. C. & D. M. CHENAULT, attorneys for appellee.

We claim that appellant in this case fails to show in his
petition that he has done any act or made any effort showing
a genuine desire on his part to carry out either of his con-
tracts made an exhibit with his pleading.

He says in his petition that he got the money and offered to
pay appellee, but he fails to say when he got it, or that he told
either of them that he had it, or that Greenleaf in whom
the title lay, refused to accept it.

He fails to say how much he offered to pay, nor does

he say under which of his contracts he was willing to settle or offered to pay.

We submit that under the allegations of the petition the court properly sustained the demurrer thereto.

Opinion of the court by JUDGE O'REAR—Reversing.

Harris bought of Greenleaf three lots at $25 each, and executed his notes, with two of his children as co-obligors, for the purchase price. Greenleaf executed a bond for title, stipulating that "said Greenleaf is and be not required to make said deed until all the $75 is paid in full." Harris was put into possession. Later, he says, he was induced to sign another paper with Greenleaf and Evans, whereby the latter agreed to sell to Harris the same lots at the price of $100 in the aggregate, to be paid October 1, 1899. In that paper it was covenanted that on payment of said sum Greenleaf and Evans were to make Harris a good and sufficient warranty deed. But it was further stipulated that, in event Harris failed to pay the $100 as agreed, he thereby relinquished all rights or claim to the land, and was to "give up his contract, and also peaceful possession of said land, without any recourse at law or in any other way." Harris paid $10 of the purchase price, and paid the tax for the two or three years while in possession, but failed to pay as required by the contracts. He avers that thereupon appellees forcibly took and now keep the possession of the lots. He brought this suit in equity for a specific execution of the original contract of purchase, alleging his willingness and ability to pay the balance of the consideration, and asking an accounting, and credit for the value of the use of the lots during the time that he was wrongfully kept out of possession by defendants. A demurrer was sustained to his petition, and, failing to amend, it was dismissed.

From the arguments here we assume the ground of the demurrer upon which the court held the petition defective was because of the failure of the plaintiff to allege that he had tendered the balance of the purchase price and because he failed to tender it with his petition. Appellees contend that, before the vendee in a contract for the sale of land can maintain an action for its specific execution, he must show not only that it is fair and reasonable, but that he has been duly diligent, and has performed, or has offered to perform, the conditions imposed on him by the contract, and that in the matter of the payment of the consideration the only sufficient offer of performance is a legal tender of the balance of the purchase price. While it is true that, where a right is made dependent upon the payment of money, the general rule is that an action can not be maintained to enforce such right without allegation of a tender of the money, yet in equity this fundamental rule is subject to modifications and exceptions. If the party suing avers that he is ready and willing to do all the acts required of him in the specific execution of the contract according to its terms, it may be enforced, other equitable requirements being satisfied. In general, the rules of equity governing an actual tender are not so stringent as those of the law. In discussing the necessity of an actual tender in contracts in which time is not essential it is admitted in the note to section 1407, Pomeroy's Eq. Jur., that the American decisions are conflicting on the subject. But the author declares that a certain "group of decisions adopts a rule more in accordance with the principles of equity, viz., that in such contracts an actual tender or demand by the plaintiff prior to the suit is not essential. It is enough that he was ready and willing, and offered at the time specified, and even

that he is ready and willing at the time of bringing the suit, unless his rights have been lost by laches, and that he offers to perform in his pleading. The plaintiff's performance will be provided for in the decree, and his previous neglect will only affect his right to costs." Among the numerous decisions cited as supporting the text is the case from this court of Woodson's Adm'rs v. Scott, 1 Dana, 470. The author adds (in which we concur): "This is unquestionably the true equitable doctrine." The case of Hart v. Brand, 1 A. K. Marsh., 159, 10 Am. Dec., 715, is enough like this one to make its principles applicable. Hart covenanted to convey to Brand a certain tract of land at $25 per acre, payable in installments. The land was to be conveyed upon payment of the first installment, the purchaser to give a deed of trust to secure the deferred payments. The circuit court decreed the execution of the contract, and Hart appealed. There was not a tender by the vendee of the purchase money; that is, there was not a legal tender, though the vendee, having the money at deposit with a banker, offered a check upon the latter, which the vendor refused, and would not wait till the specie could be got from the bank so as to make the tender good. The vendor at the same time tendered his deed. In fine, there was an apparent technical compliance by the vendor and noncompliance by the vendee, from which the vendor assumed that he was absolved from the contract. It does not appear that any other tender was attempted, and the vendee brought his suit for specific execution. The absence of the tender was relied on in defense. The court said: "Whether equity ought to give the relief sought surely depends on the circumstances of the case." And we may add that this is the universal rule. After showing a vain effort by the vendee to make a valid tender, and

the vendor's leaving without giving him further chance to complete it, the court went on to say: "But the agreement did not depend on the payment of the money as a condition precedent, whereby the mere casual failure to make payment on the precise day should render it invalid. It is sufficient to justify the aid of a court of chancery that the purchaser has, with good faith, shown a willingness and readiness, without injury to the vendor, to perform substantially the agreement." The court lays some stress on the fact of the vendor's having been instrumental in a measure in producing the delay, "giving countenance thereto by lying back."

In Hunter v. Daniel, 4 Hare, 420 (30 Eng. Ch. Rep., 420), a case very much like this one in lacking a tender by the plaintiff before suit brought for specific performance, the argument was submitted that payment was a condition precedent to the right of the plaintiff to call for the execution of the agreement, and it was argued that the bill could not properly be filed before the plaintiff had, out of court, fully performed his agreement. The court responded: "The general rule in equity certainly is not of that strict character. A party filing a bill submits to do everything that is required of him, and the practice of the court is not to require the party to make a formal tender, where, as in this case, from the facts stated in the bill, or from the evidence, it appears that the tender would have been a mere form, and that the party to whom it was made would have refused to accept the money." The case of Webster v. French, 11 Ill., 254-279, contains a very full and interesting discussion of this question. A number of cases are examined and applied, some of which were thought to be, though in fact they were not, opposed to the conclusion reached by the court; among the number being Jarboe v. McAtee's Heirs, 7 B. Mon., 279.

The court, speaking through Mr. Justice Caton, thus an-
nounced its conclusion: "The result of my examination of
this subject clearly shows that the court of chancery is not
bound down by any fixed rules on this subject by which it
will allow the substantial ends of justice to be perverted or
defeated by the omission of an unimportant or useless act,
which nothing but the merest technicality could require.
The money may at any time be ordered to be brought into
court, whenever the rights of the opposite party may require
it; but while he is insisting that the money is not his, and that
he is not bound to accept it, it would seem to be a matter of
no great consequence to him whether it is in the custody
of the court or not. The court possesses a liberal and en-
larged discretion on this subject, by the proper exercise of
which the rights of all parties may be protected." To the
same effect are Brock v. Hidy, 13 Ohio St., 306, and Deich-
mann v. Deichmann, 49 Mo., 107.

The following allegations of the petition in the case at bar
bear on the question being considered: "Plaintiff further
states that afterward, and while he was in possession of
said lots of ground, to wit, on the 16th of January, 1900,
he again saw defendant Greenleaf, and paid him $10, for
which said Greenleaf executed to him, on the 16th of January,
1900, the receipt filed herewith (marked 'Z') and signed
'Evans and Greenleaf,' and said defendant Greenleaf then
agreed with plaintiff he should have a prolongation of the
time in which to pay for this land, and stating that he would
not have any wrong done plaintiff, but his deed should be
made to him; and the plaintiff remained in possession of his
lots of ground until —— day of ——, 1901, when defendant
Evans arbitrarily, and without any legal authority what-
soever, and against the rights and consent of this plaintiff, took

forcible possession of same, and by his laborers and em-
ployes has been using same and getting the rents and bene-
fits of same, and claiming that under the contract of April
5, 1899, they belong to defendants, and that plaintiff has now
no right to said land or to a deed for same. Plaintiff after-
ward, through a friend, got the money, and offered to pay
Greenleaf, and defendant Evans would not agree to. it.
. . . Plaintiff is ready and willing to do what is fair
and equitable, and to pay what is justly due defendants after
the deduction of what is reasonable and just for the use of
same during the time possession had been withheld from
him." Appellees argue that that is not a good allegation
of a legal tender. It is not. Nor do we understand that it
was so intended by the pleader. But, in our opinion, it does
show such a state of case as in equity should excuse a better
tender, leaving the rights of the parties to be adjusted and
enforced by the chancellor by appropriate decree, as was
done in Hart v. Brand, *supra*. The provision in the last
contract, if there be anything to support that instrument,
for the vendee to forfeit his contract and all rights under
it, including possession of the lots, upon nonpayment of the
full purchase price at the time indicated in the paper, was
merely a form of additional security. Of a somewhat similar
arrangement this court in Kercheval v. Swope, 6 T. B. Mon.,
367, quoted approvingly the following language of Lord
Chancellor Hardwick in Vernon v. Stephens, 2 Pr. Wms.,
66 "If the defendant has his money and interest and costs,
he will have no reason to complain of having suffered; on the
contrary, it would be a very great hardship on the plaintiff
to lose all the money he has paid. Lapse of time in payment
may be recompensed with interest and costs. And as to
these agreements, they were all intended only as a security

for payment of the money, which end is answered by the payment of principal, interest, and costs." Of the principal case on this point this court said: "The payment of the money after Swope should enter for default of payment was contemplated, and that Swope's entry and holding the land and improvements was introduced as a security and incentive to payment by Kercheval, but was not intended to vacate the agreement; and, if it had been, a court of equity ought to relieve against a hardship and penalty so grievous to the one party, whilst the other party (Swope) had received part performance, and held the notes for the money, not vacated or released nor extinguished by such entry upon the land." Page 371, 6 T. B. Mon. True, in this case the cash payment was only $10 and taxes of no great amount. But that was by no means all that appellant was made to forfeit by the contract if the averments of this petition be taken as true, as they must be, for he says that the lots had increased in value till they are worth $375. So he would lose that enhancement which was undoubtedly his had he paid the purchase money. Appellees contend that this enhancement of value alone is an equitable consideration against the enforcement of the contract. Where conditions have so materially altered between the making of a contract and a delayed action to enforce it that it would be unjust to the resisting party to compel its execution, a court of chancery may and should refuse its aid in enforcing it. But generally mere increase in value of the property sold, happening before the specific enforcement is sought, but after the vendee has partly performed and is bound for the purchase price, and where his delay in offering to pay the balance is not unreasonable, and not in bad faith, is not enough to stay the chancellor's hand. People buy and sell

with an expectation of natural increase or fall in values. If the value of the lots had fallen naturally ever so low, it would have constituted no defense to an action brought by the vendors to collect the purchase money. As held by the Court of Appeals of New York in Prospect, etc., R. R. Co. v. Coney Island, etc., R. R. Co. (N. Y.), 39 N. E. 17, generally a contract is to be judged as of the time at which it was entered into, and, if fair when made, the fact that it has become a hard one by force of subsequent circumstances or changing events will not necessarily prevent its specific performance. It is stated that the exception to the foregoing rule is where circumstances arising subsequent to the making of the contract are such that its enforcement would be a great hardship to the defendant, and be of little or no benefit to the plaintiff. We are of opinion that the demurrer should have been overruled.

Judgment reversed, and cause remanded for proceedings not inconsistent herewith.