## Bolen, et al. v. Jenkins.

### (Decided December 10, 1915.)

## Appeal from Knox Circuit Court.

1. Tender—Refusal to Accept—Vendor and Purchaser.—Where the
   vendor has repudiated his agreement, thus making it appear that
   if a tender were made its acceptance would be refused, tender or
   offer by the vendee before suit is unnecessary; equity does not
   require a useless formality.
2. Appeal and Error—Finding of Chancellor.—Where the proof in an
   equity action is contradictory, the chancellor's finding upon an
   issue of fact will not be disturbed, where the mind is left in doubt
   as to the truth.

JESSE MORGAN, B. P. WOOTON and HAZELRIGG & HAZEL-
RIGG for apellants.

SMITH & COMBS and CHARLES H. MORRIS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER—
Affirming.

By a written contract dated June 17th, 1912, the ap-
pellants, John B. Bolen and Puss Bolen, his wife, sold
to the appellee, Jonathan Jenkins, a tract of land sup-
posed to contain 200 acres, situated on the waters of
Felt Gayheart Branch, in Knott county, at $10.00 per
acre. Jenkins paid $200.00 of the purchase price at
the time the contract was made.

The description of the land was in very general terms
and the contract provided for the fixing of the correct
acreage by a survey to be paid for by Jenkins. Bolen,
however, was to make his deed, containing a covenant
of general warranty and the other usual covenants; and
Jenkins was to pay the remainder of the purchase price
upon the delivery of the deed.

Jenkins caused a survey to be made by Adam Camp-
bell, a competent surveyor. According to this survey,
appellant's tract contained 167.32 acres; and, upon Jen-

kins demanding a conveyance from appellant in accordance with the survey, appellant declined to perform the contract, upon two grounds: (1) that the written contract was not the true contract, which was that Bolen was to receive $10.00 per acre for all the land contained within his boundary, and $700.00 in addition thereto; and (2) that the boundary contained more than 167.32 acres, and that as much as thirty acres of his land had been omitted from Campbell's survey.

Appellant insists that the $700.00 bonus was not embraced in the contract, for the reason that Jenkins did not want it put in the contract for fear it might unduly enhance the price of coal lands in that neighborhood, and that it was, for that reason, a secret agreement between appellant and Craft, the agent who conducted the business for Jenkins.

The chancellor specifically enforced the contract, and Bolen appeals.

In addition to the two defenses above specified, Bolen asks a reversal upon the further ground that Jenkins never made a tender of the purchase money.

1. Disposing of the last question first, it is clear under the facts of this case, that no tender upon the part of Jenkins was necessary, since Bolen repudiated the contract and refused to make the deed before he was finally called upon to comply with his contract. He did not put his refusal upon that ground; and by resting it upon the two grounds above specified he made a tender unnecessary.

In 36 Cyc., 705, the rule is stated as follows:

"Where the vendor has repudiated the agreement, thus making it appear that if the tender were made its acceptance would be refused, tender or offer by the vendee before suit is unnecessary. Equity does not require a useless formality."

In Elliott on Contracts, section 1972, it is said:

"It is a maxim that the law does not require a man to do a vain and fruitless thing, so it has been held that a strict and formal tender is not necessary where it appears that if made it would have been vain and fruitless. The rule may be stated as follows: An actual tender of performance may be excused when there is a readiness and willingness and an ability to perform, and actual performance has been prevented or waived by the party to whom performance is due. Thus, it has

ever been held that where the other party expressly repudiates the contract and refuses to be bound by it or it appears that he will not accept the tender where offer of performance is made, actual tender is excused.''

To the same effect see Harris v. Greenleaf, 117 Ky., 817.

2. The issue as to the incompleteness of the written contract was sharply drawn; Bolen alleged it, and Jenkins denied it, entirely. Craft, who acted for Jenkins in the trade, says that after he had made a contract to buy the land of Taulbee Bailey, which adjoined Bolen's land on the east, Craft, Campbell and Dobson went upon the land for the purpose of fixing the division line between Bolen and Bailey. Bolen met them on the ground; and there was some conversation between him and Craft about the sale of Bolen's land to Jenkins. Craft told Bolen there was a ten acre lap of his land that was claimed or owned by Bailey. Craft says that upon this occasion, he, Bolen and Campbell practically agreed upon a conditional division line between the lands of Bolen and Bailey, and that Craft offered Bolen $10.00 an acre for all of his land that was below the conditional line. Campbell says Craft offered Bolen $10.00 per acre for his actual boundary, but that there were seventy acres of the Bolen land that were claimed by Bailey, and that Craft proposed to take care of Bailey's claim.

No trade was made, however, upon that occasion, and nothing was said about the seven hundred dollar claim afterward asserted by Bolen. A few days later, however, Bolen called at Craft's residence and accepted his offer, and the terms of the sale were reduced to writing in the form of the contract of June 17th, 1912.

Jenkins paid Bailey $100.00 for the ten-acre lap or interference above referred to. Jenkins also paid Bailey for the seventy acres which both he and Bolen claimed, and offered to complete the contract with Bolen by paying him at the rate of $10.00 per acre for the 167.32 acres found to be within his boundary, according to the Campbell survey. Craft says, emphatically, that the only thing that passed between him and Bolen as to the seven hundred dollar item was his proposition to pay Bolen for the land actually within his boundary, and to pay Bailey for what he claimed of Bolen's land, which was estimated at about seventy acres, in addition to the ten acre lap above referred to; and that, in this way,

Bolen would be paid for seventy acres of land within his boundary that Bailey claimed to own.

Jenkins' side of that issue is sustained by Craft, Campbell, Dobson, and the writing. On the other hand, Bolen is sustained alone by his own testimony, in so far as direct proof is concerned. The testimony of his brother, Reece Bolen, and Reece's wife, referring to certain conversations between Campbell and Bolen, and between Craft and Bolen, would not, if competent, sustain Bolen's claim. These conversations are too vague and indefinite to amount to proof.

As an instance of this deficiency in appellant's proof, Reece Bolen testified that Campbell said he figured that the land would bring, or cost, about $13.50 per acre. When it is remembered that Jenkins paid Bolen for his land within his boundary at $10.00 per acre, and also paid Bailey for the seventy acres within the Bolen boundary, the land probably did stand Jenkins about $13.50 per acre, although Bolen was to get only $10.00 per acre, according to the contract.

3. Appellant's claim that thirty acres of his land was not included in the survey made by Campbell is without merit. Appellant had Cornett to make a survey of his land; and the substance of Cornett's testimony is that the boundary laid off by Campbell contained 165.75 acres, a difference of less than two acres—the Campbell survey showing the greater acreage.

If Cornett found the Campbell boundary to be incorrect in any respect, he failed to disclose the fact.

So, upon these issues of fact, we are not prepared to say that the findings of the chancellor were against the weight of the evidence; on the contrary, the weight of the parol testimony sustains the contract, as written.

Judgment affirmed.