PLATTE VALLEY BANK, APPELLANT, V. FRANK W. LEMKE
ET AL, APPELLEES: FEDERAL LAND BANK OF OMAHA
ET AL., INTERVENERS, APPELLEES.

3 N. W. (2d) 396

FILED APRIL 10, 1942. No. 31183.

*Charles H. Slama* and *Peterson & Devoe*, for appellant.

*Barry & Kanouff, Franklin L. Pierce* and *Edward J. Tangney, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

SIMMONS, C. J.

Two actions brought by plaintiff were consolidated for trial in the district court and on appeal here.

One action was to foreclose a real estate mortgage securing a promissory note for $776 dated May 24, 1934. The second action was to foreclose a chattel mortgage securing a promissory note for $2,682 dated May 24, 1934. The defendants' answers in these actions presented the issues, among others, that there was no consideration and a failure of consideration; that the notes and mortgages were fraudulent and void; and that the mortgage sued on was demanded and accepted in direct violation of the act of congress under which the Federal Land Bank and Federal Farm Mortgage Corporation were created and against public policy and void.

The Federal Land Bank and Federal Farm Mortgage Corporation intervened and alleged substantially facts recited' later herein; and prayed.that the action be dismissed with prejudice, the notes and mortgages be ordered surrendered and canceled, held void and of no effect, and that plaintiff be enjoined from asserting any claim against the defendants thereon. Plaintiff for answer to the petition in intervention and reply to defendants' answer set out its theory of the transaction and averred its proper conduct and right to recover.

Trial was had and the court found "generally for the interveners and against the plaintiff; that the allegations of interveners' petitions of intervention are true; that the notes and mortgages described in plaintiff's petition are fraudulent and void; and that plaintiff has no cause of action against the defendants on said notes and mortgages, or either of them." Plaintiff's petitions were dismissed with prejudice; the notes and mortgages were ordered surrendered and canceled and plaintiff was enjoined from asserting any claim thereon against the Lemkes. Plaintiff appeals.

The facts of these cases may be summarized as follows: In October, 1933, defendant Lemke was the owner of a quarter-section of land in Saunders county, an undivided one-third interest in a 27-acre tract, 'and personal property. The quarter-section of land was mortgaged to an insurance

company for $10,000; payments of interest were in default, and the mortgage subject to foreclosure. Lemke also owed the plaintiff some $6,800 represented by different notes and secured by a chattel mortgage on the personal property, by a real estate mortgage junior to the insurance loan on the quarter-section, and by a real estate mortgage on the undivided interest in the small tract. Lemke also owed a lumber company some $1,900 secured also by a junior mortgage on the quarter-section. Lemke was unable to meet his obligations.

One Emil E. Wolf was cashier and representative of the plaintiff throughout these transactions. He also appears to have represented the lumber company. Wolf was pressing Lemke for payment and suggested that Lemke apply for a federal farm loan in the sum of $5,000. Lemke testified that Wolf told him they (Lemke's creditors) would have to take what they could get. Lemke applied for the loan, reciting in the application that his indebtedness to the bank "can be compromised and interest thrown off." Later, in November, 1933, Lemke, at Wolf's suggestion, applied for $15,500. Later, Wolf told Lemke that he could get $14,000 and "it had to pay all debts." Wolf tried to get the land bank to raise this to $15,000. By letter dated February 24, 1934, the land bank notified Wolf that the amount of $14,000 recommended (namely $9,000 land bank and $5,000 land bank commissioner loans) had been reconsidered and no changes made in the amounts, "conditional that the proceeds of both loans pay in full all of applicant's indebtedness."

Lemke testified that early in March Wolf told him that the land bank would not increase the loan; advised Lemke to accept the $14,000 loan; and said that the bank and the lumber company had agreed on how much each was to get, that his notes to the bank were past due and the banking department would not allow them to be carried that way, that it would take several months for the new loan to go through; and asked for new notes and mortgages, which Lemke and wife signed with the amounts in blank. Wolf

testified that Lemke agreed to give new notes for the balance. This Lemke denies. Wolf testified that he took the new notes and mortgages "after the loan was negotiated." Wolf further testified that the notes and mortgages in suit were signed, acknowledged and delivered, with amounts filled in, on the date shown on their face, to wit, May 24, 1934, which was the day the transaction was closed except as hereinafter set out.

The land bank and commissioner mortgages were executed on April 20, 1934, and acknowledged before Wolf as a notary. The abstracts were extended, the requirements of the land bank announced, and on May 24, 1934, the new loan was ready to close in the office of the land bank representative at Wahoo. Wolf delivered to the land bank releases of all the recorded mortgages and the bank's notes marked "paid May 24, 1934." Lemke also gave them an affidavit that the proceeds of the land bank loans paid his indebtedness in full. At that time a detailed affidavit was submitted to Wolf for signature; he demurred to signing it, but on the following day executed and delivered the affidavit to the land bank referring to the $6,800 indebtedness to his bank, to the mortgage securing it, to the lumber company note and mortgage, and specifically stating "that the said mortgages, and each of them, the terms and conditions thereof, are fully satisfied and that said mortgages, and each of them, are released and discharged of record. And further affiant says that the sum of $6,800 mentioned in said application as owing to the Bank of Morse Bluff (predecessor in name of plaintiff bank) is fully paid and satisfied." The land bank was not then advancing cash on its loans but delivering its bonds. An order for the delivery of the bonds to the plaintiff bank was then issued. It further appears that the bonds were not actually delivered to plaintiff bank but a month or so later plaintiff bank received credit from an Omaha bank. The plaintiff bank, however, ran credits through to Lemke as of May 24 indicating that they knew at that time how much they would receive on the bonds. On July 6, 1934, six and one-half weeks later, the chattel and real estate mortgages here in suit were placed of record.

Lemke testified that all of his debts to the plaintiff bank were to be paid and satisfied from the proceeds of this loan and that Wolf agreed to that basis of settlement. The facts of the transaction support that testimony, although Wolf testified that he told Lemke that neither he nor the lumber company would so accept the payment. However, it is undisputed that the land bank at all times considered that its loan was to pay all of Lemke's debts; that it would not have made the loan under any other condition; that it did not know of the new notes and mortgages to plaintiff bank and would not have closed the loan had it known of those instruments; that it issued the order for delivery of the bonds only after receiving Wolf's affidavit that the indebtedness to his bank was paid and acted in reliance thereon; and that Wolf knew that to be the position of the land bank. Wolf, however, took the land bank money with an undisclosed intention to hold Lemke for the balance. He was asked on cross-examination: "Q. And you knew that the Federal Land Bank loan would not go through and the Platte Valley Bank would not receive the cash or bonds turned over to it if Mr. Roberts or the Federal Land Bank knew you had taken renewal notes? A. I didn't think anything about that. * * * Q. Well, you didn't at any time tell Mr. Roberts or the Federal Land Bank that you had taken new notes and mortgages? A. They didn't ask me." On re-cross-examination he testified: "Q. Then as far as Lemke was concerned you intended to collect the balance of his indebtedness all the time? A. Yes, sir."

Wolf testified that the original indebtedness was paid by the proceeds of the land bank loan, "some checks for hogs" and "the balance by giving new notes." He was asked: "Q. And at the time you made this affidavit you were still claiming that Mr. Lemke was indebted to you for the amount of the notes in suit? A. He was by renewal; yes."

On behalf of the land bank the evidence shows that, if the plaintiff's claim is established and the foreclosure of the chattels allowed, Lemke will be unable to continue his farming operations and unable to meet his obligations to the bank.

One other bit of evidence should be mentioned. In the winter of 1938-1939 Wolf attempted to get Lemke to sell his land to one of the lumber company men. Lemke refused. Wolf testified that at that time Lemke said he would not receive enough from the sale to pay the land bank, the plaintiff bank and the lumber company. Lemke denies this latter statement.

The net of this transaction is, if plaintiff's position is to be sustained, that it has received a part of the proceeds of the land bank loan and a reinstatement substantially to its prior position as a secured creditor of the Lemkes.

Plaintiff vigorously assails the finding and decree of the trial court. Plaintiff argues that, in order for a representation to be fraudulent, one of its essential elements must be a statement of fact which is untrue; that the Wolf affidavit of May 25, 1934, was true; that the bank's interest in and claim against the property had been extinguished and satisfied by the acceptance of a part of the proceeds of the loan together with the notes and mortgages which are involved in this suit. This argument ignores the statement in the last sentence of the affidavit "that the sum of $6,800 * * * is fully paid and satisfied." Such refinement in the meaning of language and secret construction of words will not be accepted when it leads to a patently false result. This record is replete with evidence that Wolfe knew the construction which the land bank put upon the words used in the correspondence and affidavit, and he knew that they thought he agreed with them in that construction. "Paid in full" as used in this record meant that the debt was extinguished in fact and not paid by "renewal" notes and mortgages, secretly secured, the enforcement of which would result in a nullification of the condition upon which the loan, to Wolf's knowledge, was made. The affidavit was prepared and submitted to him. Wolf knew that the loan would not be consummated if the affidavit was not signed. Wolf desired that the loan be made. He signed the affidavit without questioning the construction. He accepted the money which the affidavit helped him to secure. He cannot now success-

fully assert that the language had a different meaning than that intended by the land bank. Section 20-1217, Comp. St. 1929, provides that, "When the terms of an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party in which he had reason to suppose the other understood it."

Plaintiff next argues, that even though there were false representations, interveners cannot recover because they have not been damaged. This court has said: "To maintain an action for damages for false representation the plaintiff must allege and must prove what representation was made; that it was false and so known to be by the defendant charged with making it, or else was made without knowledge as a positive statement of known fact; that the plaintiff believed the representation to be true; that he relied on and acted upon it, and was thereby injured." *Scovel v. Isham,* 113 Neb. 238, 202 N. W. 869.

Plaintiff argues that interveners may foreclose and in due time secure a sale of the property, and plaintiff says it will bid in the property up to $16,000 and therefore interveners are not damaged. Interveners parted with their money on the faith of plaintiff's representations. That they have been injured, and will be injured if plaintiff prevails, is amply demonstrated by this record.

Plaintiff next urges that interveners are guilty of laches. We shall not determine the question of whether or not this issue was properly presented by the pleadings. The notes upon which plaintiff sues are dated May 24, 1934, payable one year thereafter. Plaintiff is a commercial banking corporation. It alleges that it has obligations legally binding and payable and secured by mortgages. Yet this record establishes that the plaintiff waited four and one-half years or until November, 1939, before it attempted either by personal solicitation or court action to collect the alleged debt. During that time it permitted the statute of limitations to operate against action on one note arising out of this same transaction. It knew the facts of this transaction. It has not changed its position. Can it be heard in a plea of laches

against the defendants and interveners? We think not. "The doctrine cannot be invoked to defeat justice, and it will be applied only where the enforcement of the right asserted would work injustice." 21 C. J. 214. The defense of laches is not favored. It is only in those cases where the party has been guilty of inexcusable negligence in enforcing a right that the rule has been applied. *Langdon v. Langdon,* 104 Neb. 619, 178 N. W. 178. Laches does not grow out of the mere passage of time. It is founded upon the inequity of enforcing a claim where there has been a change in the condition or relations of the property or parties. *Geiss v. Trinity Lutheran Church Congregation,* 119 Neb. 745, 230 N. W. 658; *Schurman v. Pegau,* 136 Neb. 628, 286 N. W. 921.

The judgment of the trial court is

AFFIRMED.