**SHELL v. STRONG.**

No. 3117.

Circuit Court of Appeals, Tenth Circuit.

Aug. 8, 1945.

Rehearing Denied Nov. 5, 1945.

---

[2] With certain exceptions not here pertinent.

MURRAH, Circuit Judge, dissenting.

———◆———

George Siefkin, of Wichita, Kan. (Carl Van Riper, of Dodge City, Kan., and Robert C. Foulston, Samuel E. Bartlett, and George B. Powers, all of Wichita, Kan., on the brief), for appellant.

Paul R. Kitch, of Wichita, Kan. (Howard T. Fleeson and Homer V. Gooing, both of Wichita, Kan., on the brief), for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

On August 1, 1932, Strong and Shell entered into a written contract which recited that Strong had purchased seven quarter sections of land situated in Wichita County, Kansas, and had paid therefor $9,600, and that Shell was desirous of obtaining a one-half interest in the profits that might be derived from the use or sale of such land. It provided that Shell should pay one-half of all taxes on the land becoming due and payable for the year 1932 and succeeding years during the life of the contract; that Shell should have a one-half interest in all the profits realized from the land during the life of the contract, either from crops or from the sale of the land; that Shell should have an option to purchase, for $4,800, a one-half interest in the land at any time during the life of the contract, and that upon the exercise of such option, Strong would convey a one-half interest in the land to Shell, or such person as Shell might designate, by a good and sufficient warranty deed; and that the contract should continue for a period of five years from August 1, 1932.

Shell managed and rented the land and collected the income therefrom from the date of the contract until the year 1936. Thereafter, Strong managed the land. During the term of the contract, each paid one-half of the taxes and one-half of the incidental expenses and received one-half of the net income. On or about August 1, 1934, the parties made a settlement of the interest due from Shell to Strong, and Shell was given credit for the amount of interest which had accrued to that date. Shell made no direct payments of interest after August 1, 1934, but on or about October 15, 1936, Strong received $478.18 as a bonus under an oil and gas mining lease on a portion of the land, and after deducting an expense item of $1.50, credited one-half of the remainder, or $238.34, on interest due from Shell. Shell consented to such application of the bonus money.

On July 31, 1937, Shell tendered to Strong $5,373.87, and demanded a deed to an undivided one-half interest in the land. Strong refused to accept the tender and refused to convey the one-half interest to Shell. The sum tendered included the agreed price of $4,800 and the balance of

the interest due from Shell to Strong to July 31, 1937, and other items for which Shell was liable under the contract.

On July 31, 1942, Shell brought this action against Strong seeking specific performance of the contract to convey an undivided one-half interest in the land.

Strong filed an answer in which he set up a number of defenses. At the pretrial conference, all of such defenses were abandoned except laches.

At the trial, evidence was introduced with respect to the value of the land on July 31, 1937, and July 31, 1942, and the intervening period. The trial court found that there was no material difference in the value of the land on July 31, 1937, and July 31, 1942; that there was a decrease in value between July 31, 1937, and the early part of 1939, and that in 1940 the land began to increase in value. The trial court concluded, as a matter of law, that Shell had abandoned the contract and was barred from relief in equity by laches. Shell has appealed.

Lapse of time alone does not constitute laches.[1] Delay will not bar relief where it has not worked injury, prejudice, or disadvantage to the defendant or others adversely interested.[2]

Since laches is an equitable defense, its application is controlled by equitable considerations.[3] It cannot be invoked to defeat justice,[4] and it will be applied only where the enforcement of the right asserted will work injustice.[5]

A court of equity is not bound by the statute of limitations, but, in the absence of extraordinary circumstances, it will usually grant or withhold relief in analogy to the statute of limitations relating to actions at law of like character. Under ordinary circumstances, a suit in equity will not be stayed for laches before, and will be stayed after, the time fixed by the analogous statute, but if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of a suit after a briefer, or to forbid its maintenance after a longer, period than that fixed by the analogous statute, a court of equity will not be bound by the statute, but will determine the extraordinary case in accordance with the equities which condition it. When a suit is brought within the time fixed by the analogous statute, the burden is on the defendant to show, either from the face of the complaint or by his answer, that extraordinary circumstances exist which require the application of the doctrine of laches. On the other hand, when the suit is brought after the statutory time has elapsed, the burden is on the complainant to aver and prove circumstances making it inequitable to apply laches to his case.[6]

---

[1] Calkin v. Hudson, 156 Kan. 308, 133 P.2d 177, 184; Dusenbery v. Bidwell, 86 Kan. 666, 121 P. 1098, 1101; Kansas Electric Utilities Co. v. Bowersock, 109 Kan. 718, 202 P. 92, 96; Spradling v. Hawk, 133 Kan. 545, 1 P.2d 268, 271; Preston v. Shields, 159 Kan. 575, 156 P. 2d 543, 549.

[2] McGill v. National Bank of Topeka, 147 Kan. 605, 77 P.2d 944, 946; Spradling v. Hawk, 133 Kan. 545, 1 P.2d 268, 271; Harris v. Defenbaugh, 82 Kan. 765, 109 P. 681, 683; Dusenbery v. Bidwell, 86 Kan. 666, 121 P. 1098, 1101.

In Kansas Electric Utilities Co. v. Bowersock, 109 Kan. 718, 202 P. 92, 96, the court said:

"It has been said that:

"'Laches in legal significance is not mere delay, but delay that works a disadvantage to another.' * * * "

In Harris v. Defenbaugh, 82 Kan. 765, 109 P. 681, 683, the court said:

"'Laches does not, like limitation, grow out of the mere passage of time; but it is founded upon the inequity of permitting the claim to be enforced—and inequity founded upon some change in the condition or relations of the property or the parties.' * * * A large number of cases are cited where laches is held to be a defense, but they all proceed upon the theory that not mere delay, but delay that works a disadvantage to others, must be shown before the doctrine can be invoked."

[3] Columbian National Life Ins. Co. v. Black, 10 Cir., 35 F.2d 571, 575, 71 A. L.R. 128.

[4] Winget v. Rockwood, 8 Cir., 69 F.2d 326, 333.

[5] Winget v. Rockwood, 8 Cir., 69 F.2d 326, 333; Hiett v. Inland Finance Corp., 210 Cal. 293, 291 P. 414, 417; Motel v. Andracki, 299 Ill.App. 166, 19 N.E.2d 832, 835; Earley v. Automobile Ins. Co. of Hartford, Conn., Mo.App., 144 S.W.2d 860, 863; Platte Valley Bank v. Lemke, 141 Neb. 218, 3 N.W.2d 396, 399.

See, also, Harris v. Defenbaugh, 82 Kan. 765, 109 P. 681, 683.

[6] Backus-Brooks Co. v. Northern Pac. R. Co., 8 Cir., 21 F.2d 4, 12; Columbian National Life Ins. Co. v. Black, 10 Cir.,

■ Shell brought his action within the period of the analogous statute of limitations. The burden was upon Strong to establish such a change in conditions to his prejudice that would make it inequitable to grant Shell relief by way of specific performance. The trial court evidently believed the burden rested on Shell to explain his delay in bringing the suit.

■ By waiving the other defenses asserted in the answer and urging only laches as a bar to relief, Strong conceded he had no other defense to the action. It is clear, therefore, that in refusing to accept the tender and convey a one-half interest in the land to Shell, Strong breached the contract. Strong stood before the court, admitting that he had breached the contract and asking the court to condone the breach and deny Shell any relief in equity solely because Shell had waited until the last day of the analogous statute of limitations to commence the action and because, although there was no substantial difference in the value of the land on the date of the tender and on the date of the commencement of the action, there had been some fluctuation in value during the intervening period.

Strong did not deny that the contract was valid and enforceable against him. He did not deny his obligation to convey. In that sense, he did not repudiate the contract. He simply refused to accept the tender and make the conveyance.

The record is devoid of any proof that Strong either acted or refrained from acting to his prejudice in reliance upon a belief that Shell would not insist on performance of the contract.

While farmlands in Kansas fluctuate in value, increasing in value during periods of rainfall adequate for the growing of crops, and decreasing in value during periods of drought, such lands are not comparable with undeveloped mining properties, the exploration of which may prove them to be of great value or to be practically worthless, or with other properties highly speculative in character.

■ It is a general rule that the mere fact that the value of the land, which is the subject of the contract, has increased or diminished since the contract was executed will not warrant a court in refusing to grant a decree of specific performance, in the absence of a showing that the plaintiff in bad faith delayed bringing his action in order to speculate on a change in value to his advantage.[7]

■ Strong wholly failed to establish any prejudice to him as the result of the delay in the commencement of the action. While the land did fluctuate in value in the interim, since the value of the land at the time of the tender and at the time suit was commenced was substantially the same, Strong suffered no disadvantage from the delay.

We are of the opinion that Strong wholly failed to establish any basis for the application of the doctrine of laches.

The judgment is reversed and the cause remanded with instructions to enter judgment awarding Shell specific performance of the contract.

MURRAH, Circuit Judge (dissenting).

I cannot consent to the reversal of judgment of the chancellor in this case. It is a cardinal principle of equitable jurisprudence that one who seeks specific performance of a contract must show that he has been "prompt, ready, able and eager to perform and abide by the same"—equity aids only the diligent, not the ones who slumber on their rights. Furthermore, an

35 F.2d 571, 575, 71 A.L.R. 128; Gaskins v. Bonfils, 10 Cir., 79 F.2d 352, 357; City of Roswell, New Mexico, v. Mountain States T. & T. Co., 10 Cir., 78 F. 2d 379, 384; Kelley v. Boettcher, 8 Cir., 85 F. 55, 62.

Cf. Russell v. Todd, 309 U.S. 280, 288, 60 S.Ct. 527, 84 L.Ed. 754.

7 Franklin Telegraph Co. v. Harrison, 145 U.S. 459, 473, 12 S.Ct. 900, 36 L.Ed. 776; Willard v. Tayloe, 8 Wall. 557, 570, 571, 19 L.Ed. 501; Eakin v. Wycoff, 118 Kan. 167, 234 P. 63, 67; Anderson v. Anderson, 251 Ill. 415, 96 N.E. 205, 267, 268, Ann.Cas.1912C, 556; Harris v. Greenleaf, 117 Ky. 817, 79 S.E. 267, 269, 270, 4 Ann.Cas. 849; Keogh v. Peck, 316 Ill. 318, 147 N.E. 266, 268, 38 A.L. R. 1151; Brown v. Brown, 274 Ill. 325, 113 N.E. 634, 636; Forest Preserve Dist. of Cook County v. Emerson, 341 Ill. 442, 173 N.E. 477, 478; East Jellico Coal Co. v. Carter, Ky., 97 S.W. 768, 770; Pomeroy's Equity Jurisprudence, Vol. 5, § 2219.

See, also, Indiana & Arkansas Lumber & Mfg. Co. v. Brinkley, 8 Cir., 164 F. 963, 969, 970; Wilson v. Colorado Mining Co., 8 Cir., 227 F. 721, 727.

action for specific performance appeals largely to the discretion of the trial court, and will not be granted unless it affirmatively appears that it is equitable to do so. Fowler v. Marshall, 29 Kan. 665.

If a party to a contract fails to assert his rights under it for such a length of time as to give the impression that he has waived or abandoned it, or has acquiesced in the other party's repudiation of it, he will be denied specific performance. See Specific Performance as a Matter of Right, 65 A.L.R. 53. Thus, it has always been the law in Kansas that "when a contract is repudiated by one of the parties thereto, the other party has a right to take such steps as he may deem necessary to protect himself against loss or damage because of such repudiation. The law imposes on him the duty of acting promptly, and if he does not so act, he can neither have specific performance nor collect damages, but will be held to have acquiesced in the repudiation of the contract." Parks v. Monroe, 99 Kan. 368, 161 P. 638. See also Fowler v. Marshall, supra. When on July 31, 1937, appellee refused appellant's tender under the contract, it became the duty of appellant to act with reasonable diligence and promptitude if he was to have the assistance of equity in the enforcement of his rights under the contract. But he did nothing to manifest his interest in the contract or its repudiation—for five years, lacking one day, he wholly ignored the contract and its repudiation. He neither tendered the interest on the unpaid purchase price, nor demanded any of the rents or profits from the land which the contract gave him.

The land in question was leased for oil and gas in 1936—"there was an oil boom in 1937 and royalty could be sold." The trial court found, and it is not disputed, that when on July 31, 1937, the tender was made under the contract, the land was of greater value than the contract price. Shell had the legal right to exercise his option to purchase by appropriate tender at any propitious time during the contractual period, but after the refusal of the tender he could not choose the most advantageous time to enforce his tender in a court of equity. Following the "oil boom" in 1937 there was a "material decrease" in the value of the land, but in 1940 the land began to increase in value and continued to increase because of good crops until the trial date. When in 1942 the land had increased $5,000 in excess of the purchase price the appellant decided to compel performance of the contract, and brought this suit in equity for that purpose just one day less than five years from the date of its repudiation. Based on these undisputed facts the trial court held that the unexplained failure of the appellant to seek relief after repudiation for five years, lacking one day, indicated an abandonment of the contract and his acquiescence in its repudiation by the appellee.

Since specific performance rests largely within the sound discretion of the trial court, we have not the right to override its judgment unless from all the facts we must say that the trial court acted arbitrarily. We should not reverse simply because as the trier we might have appraised the facts differently and drawn different conclusions therefrom. From my own appraisal of the facts, I am unable to say that the trial court arbitrarily closed its doors to one who came with clean hands, was diligent and otherwise without fault.

I would affirm the judgment.

### On Petition for Rehearing.

PHILLIPS, Circuit Judge.

In the instant case, the defense of laches was based solely on the lapse of time and the action was brought within the period of the analogous statute of limitations. In the time that intervened between the tender and the commencement of the action, no change in the situation occurred that was detrimental to Strong. Strong did not deny that he was obligated under the contract. He merely refused to deed an undivided one-half interest in the land to Shell, as he was obligated to do. Instead of performing in accordance with the terms of the contract, he offered to divide the land and convey to Shell a full title to one-half thereof.

We think the cases cited in the petition for rehearing are distinguishable from the instant case. In Fowler v. Marshall, 29 Kan. 665, 29 Kan., 2d Ed.; Ann. p. 475, the facts were these: On July 2, 1878, Moore conveyed a lot in Topeka, Kansas, to Marshall and took back a mortgage for part of the purchase price; Marshall defaulted in his payments; on May 13, 1880, Moore commenced an action to foreclose the mortgage; Fowler, on his own motion, was made a party to the suit; he filed an answer in which he claimed to be the equitable owner of the property under a contract with Moore dated December 10, 1877.

The contract recited a down payment of $5 and provided that Fowler should pay $5 monthly, with interest, until the full sum of $125 had been paid. Fowler sought specific performance of the contract. Fowler testified that he had paid $35 to Moore's agent; Moore testified that he had received only $20. After the contract of December 10, 1877, Fowler took possession and put $100 worth of improvements on the premises. Thereafter, in May, 1878, he delivered possession to Marshall. Fowler testified that Marshall entered as his tenant. Marshall testified that he entered under a contract of purchase upon which he had made payments aggregating $22, in support of which he offered receipts for such payments. In June, 1878, an agent of Moore notified Fowler that he had forfeited his contract and also advised Marshall of that fact. Fowler thereupon told Marshall that he could not receive any further payments from him as he could not perfect his arrangements with Moore. After the notification of forfeiture, Fowler made no further payments nor tender of payments to Moore and made no demand for payments from Marshall. Not until he filed his answer did he assert any further rights under his contract. It will be noted that in this case there was an express repudiation of the contract and an acquiescence therein by Fowler. The trial court denied Fowler specific performance and he appealed. It is significant that the court said:

"We do not wish to be understood as holding that the mere lapse of time, * * * would of itself be sufficient to defeat plaintiff in error's recovery, but only refer to it as one of the matters which contribute to justify an upholding of the decision."

In Agens v. Koch, 74 N.J.Eq. 528, 70 A. 348, 349, the facts were these: Agens and others entered into a contract by which they agreed, in consideration of $20,000, to convey to Koch, by warranty deed, "a perfect record title" to a tract of vacant land, on or before October 15, 1906. On October 15, by written agreement endorsed on the contract, the time for performance was extended to October 19, 1906. Koch intended to erect a building on the tract of land and early possession was important, if not necessary, to effect the object of the purchase. The vendors knew that Koch intended to build and that he desired immediate unclouded possession. The title to the property was clouded by two judgment liens and by a dedication of a street across a considerable portion of the frontage of the property. Koch rejected the title on account of such defects on October 19, 1906. On February 1, 1907, Koch brought an action to recover the money he had deposited under the contract. On February 19, 1907, the vendors brought an action for specific performance. Koch answered setting up as defenses the defects in the title and the fact that time was of the essence of the contract. At the time the action for specific performance was commenced, the defects had not been cured. They had been cured at the time of the hearing. The court held that the vendors were not barred by laches, but that time was of the essence of the contract and on that ground denied specific performance.

Livermore v. Beal, 18 Cal.App.2d 535, 64 P.2d 987, was an action to quiet title. A defense of laches was asserted. The land involved was mineral land. There was a long delay in the commencement of the action and in the interim the defendants had entered under oil and gas prospecting permits issued by the Secretary of the Interior and had developed the land for oil and gas, which greatly enhanced its value. In that case, in addition to the delay, plaintiffs stood by while the defendants, under the permits, developed the land and greatly enhanced its value. The court held the plaintiffs were barred by laches.

In Superior California Fruit Land Co. v. Grossman, 32 Cal.App. 357, 162 P. 1046, the action was to quiet title. The defendants filed a cross-complaint, in which they sought to set up a cause of action for specific performance of an option contract executed to them by an option holder. The cross-complaint was filed three years and nine months after the second option was given, and after the original option holder had sold and conveyed to a third party through whom the plaintiffs claimed. The defendants did not show any valid tender of the money representing the purchase price, and after the recording of the instruments, under which plaintiffs claimed, and after plaintiffs had gone into possession, remained silent and inactive. The court held that defendants were barred by laches.

In Alexander v. Phillips Petroleum Company, 10 Cir., 130 F.2d 593, 605, the plaintiffs sought to redeem certain stock from a pledge and to recover possession thereof.

In applying the doctrine of laches, the court said:

"Laches consists of two elements, inexcusable delay in instituting suit and prejudice resulting to the defendant from such delay. Its existence depends upon the equities of the case, and not merely upon the lapse of time."

Ketcham v. Owen, 55 N.J.Eq. 344, 36 A. 1095, was an action for specific performance of a contract for the sale of land. The contract was signed only by the vendor. The vendor asserted misrepresentation and inadequacy of consideration and advised that she would not perform the contract. The vendor made no tender of performance. The notice of repudiation was given in April, 1890. The purchaser did not bring the action until August, 1893. The court held that because of the inadequacy of consideration and the lapse of time, the purchaser was barred by laches.

Marsh v. Lott, 156 Cal. 643, 105 P. 968, 969, was an action for specific performance of an option contract. The purchaser made a tender, which was refused. He did not bring his action until a lapse of more than three years after the tender, and in the interim the property had increased in value approximately 50 per cent. The court said:

"It is undoubtedly true that when an express statute of limitation applies to a suit in equity, mere delay to commence the suit for a period less than that of the statute of limitations is never a reason for dismissing the proceeding. Lux v. Haggin, 69 Cal. [255] 267, 4 P. 919, 10 P. 674. There must be other circumstances which, taken in conjunction with the mere lapse of time, render it inequitable to enter into the investigation or give the relief sought."

In Schaffer v. Latta, 113 N.J.Eq. 589, 168 A. 41, which was an action for specific performance, after the purchaser had been in default for three years the vendor brought an action for damages. The bill for specific performance was not filed until one year after the damage suit had been instituted. After defaulting under the contract, the purchaser continued to occupy the premises and pay rent. The court held that, under the circumstances, the purchaser had abandoned his contract and was barred by laches.

Since, in the instant case, no change in conditions occurred between the tender and the commencement of the action which created equities in favor of Strong, and the defense of laches rested solely on the lapse of time, we adhere to our former decision.

The petition for rehearing is denied.

MURRAH, Circuit Judge, dissents.