**CONTINENTAL BANK AND TRUST COMPANY, Receiver of Inland Empire Insurance Company, Plaintiff,**

v.

**TRI-STATE GENERAL AGENCY, INC., Defendant.**

**Civ. No. 6140.**

United States District Court
D. Colorado.
July 15, 1960.

McCarthy & White, Denver, Colo., for plaintiff.

Chisholm, Howard & Daane, Denver, Colo., for defendant.

KERR, District Judge (assigned).

In this action plaintiff, Continental Bank and Trust Company, Receiver of

Inland Empire Insurance Company, seeks to recover from the defendant, Tri-State General Agency, Inc., certain monies allegedly due and owing to the plaintiff, towit, the sum of $12,162.20, and, in addition, plaintiff seeks to dismiss the defendant's counterclaim for the amount of $30,375.

Jurisdiction for this action, filed on July 24, 1958, comes from a diversity of citizenship and the amount sought to be recovered. Title 28 U.S.C. § 1332.

From the pretrial admissions, the pretrial order, and the testimony adduced at the trial, it is undisputed that in the latter part of 1952 and again in the latter part of 1953 Defendant purchased 225 shares of preferred stock from Louisville Fire and Marine Insurance Company for the cash price of $30,375. Prior to said purchase and sale the President of the defendant company inspected the financial statements of Louisville Fire and Marine Insurance Company and he was told by an officer of said company that the company was selling its stock because it intended to expand its business. The President of the defendant company testified that he thought he was making a good investment and that the Tri-State Agency would be able to enlarge its operations, due to the fact that the Louisville Fire and Marine Insurance Company's financial statement showed a surplus to policyholders of four to five million dollars.

In December of 1954, Louisville Fire and Marine Insurance Company was in financial straits resulting in a court order dated January 21, 1955, by which Inland Empire Insurance Company succeeded to all the assets and assumed certain liabilities of Louisville Fire and Marine Insurance Company. Defendant was fully advised of and was present at the conferences and meetings culminating in the so-called rehabilitation or reorganization proceedings by the Commissioner of Insurance for the state of Kentucky. Defendant's President was one of the signatories to the "Declaration" of cooperation in said proceedings. Inland Empire Insurance Company sub-sequently went into receivership, the Continental Bank and Trust Company having been appointed Receiver.

In answer filed August 14, 1958, to the complaint, defendant interposed the counterclaim alleging the plaintiff's indebtedness to the defendant in the amount of $39,241.49 "for moneys advanced, license fees, and contingents". The contingents and license fees totaling $8,866.49 were ultimately confessed by the plaintiff and the defendant admitted owing the plaintiff the sum of $12,162.20, leaving only the balance of $30,375.00 in the counterclaim in dispute. The issue of fraud and misrepresentation practiced by the Louisville Fire and Marine Insurance Company was raised by the defendant in its amended answer and counterclaim filed February 23, 1960.

It is the defendant's contention that the officers and agents of Louisville Fire and Marine Insurance Company falsely and fraudulently, and with intent to deceive and defraud the defendant enticed the defendant to purchase its shares of stock; that the officers and agents of Louisville Fire and Marine Insurance Company knowingly and falsely misrepresented to the defendant that the stock was for sale, that the financial status of the company was sound and liquid, that the company intended to expand its operations, and that the company had been paying dividends to its other stockholders. Supporting its theory of fraud and misrepresentation, defendant contends that Louisville Fire and Marine Insurance Company was not paying dividends to its stockholders, that it did not intend to expand, that it was not in a sound financial condition and that it officers were, at that time, contemplating receivership. In reliance upon said alleged fraud and misrepresentations, defendant claims it was damaged in the amount of the purchase price of said 225 shares of stock; seeks a refund of said purchase price plus interest; and prays that the transfer of stock be set aside and held for naught.

Plaintiff's defense to the counterclaim is threefold: first, that the defendant

waived any right to damages and recision of the sale of stock because of its delay in asserting fraud and misrepresentation from the time of purchase in 1952 and 1953 to the date of its counterclaim in February 1960; secondly, that laches bars the defendant from rescinding the purchase and sale of stock; and lastly, that the statute of limitations has run against any rights which the defendant might have had against the plaintiff due to fraud and misrepresentation.

The evidence disclosed that defendant became aware of the alleged fraud and misrepresentation in December of 1954. In mitigation of its delay to institute proceedings for remission and damages, defendant argues (1) that laches is no bar to its claim because plaintiff was not injured by the delay; (2) that this is an action in equity and the Court has inherent authority to allow the set-off regardless of laches or the running of the statute of limitations; (3) that when it discovered the fraud it believed that Louisville Fire and Marine Insurance Company was insolvent and that it would be futile to assert its claim; and (4) that it could not find anyone to sue in the plaintiff company.

I will dispose of defendant's last argument first as it is completely untenable. Both Louisville Fire and Marine Insurance Company and Inland write insurance in the State of Colorado and pursuant to Colorado law the Colorado Insurance Commissioner is their duly constituted agent for service.

The underlying principle of the equitable doctrine of laches is to promote justice, and to prevent inexcusable delays. Hoehn v. Crews, 10 Cir., 1944, 144 F.2d 665; Shell v. Strong, 10 Cir., 1945, 151 F.2d 909. Similarly, the various statutes of limitation are enacted in the interest of substantial justice as stated in Order of Railroad Telegraphers v. Railway Express Agency, 1944, 321 U.S. 342, 348–349, 64 S.Ct. 582, 586, 88 L.Ed. 788:

"Statutes of limitation, like the equitable doctrine of laches, in their conclusive effects are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them. * * *".

There is respectable authority supporting the applicability of statutes of limitations in equitable actions. In the case of Shell v. Strong, supra, is the oft-quoted statement [151 F.2d 911]:

"A court of equity is not bound by the statute of limitations, but, in the absence of extraordinary circumstances, it will usually grant or withhold relief in analogy to the statute of limitations relating to actions at law of like character. Under ordinary circumstances, a suit in equity will not be stayed for laches before, and will be stayed after, the time fixed by the analogous statute, but if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of a suit after a briefer, or to forbid its maintenance after a longer, period than that fixed by the analogous statute, a court of equity will not be bound by the statute, but will determine the extraordinary case in accordance with the equities which condition it. When a suit is brought within the time fixed by the analogous statute, the burden is on the defendant to show, either from the face of the complaint or by his answer, that extraordinary circumstances exist which require the application of the doctrine of laches. On the other hand, when the suit is brought after the statutory time has elapsed, the burden is on the complainant to aver and prove circumstances making it

inequitable to apply laches to his case."

It is the opinion of this Court that the defendant has attempted to assert its claim too late. When, as here, jurisdiction of the Federal Court is based solely on the diversity of citizenship of the parties, the statute of limitations is applicable to equitable as well as to legal actions. Under such circumstances recovery cannot be had in the Federal Court if the law of the forum would bar recovery had the action been brought in the state court. Cope v. Anderson, 1947, 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602; Guaranty Trust Co. v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079; Russell v. Todd, 1940, 309 U.S. 280, 60 S.Ct. 527, 84 L. Ed. 754; Wade v. Lynn, D.C.Ohio 1960, 181 F.Supp. 361.

I adhere to the well established rule that the lex fori provides the controlling statute of limitations in the absence of an applicable federal statute of limitations. The state of Colorado statute of limitations applicable to this action, C.R.S. 1953, as amended, Chap. 87–1–10, provides that bills for relief on the ground of fraud shall be filed within three years ("and not afterwards") after the aggrieved party discovers the fraud. It is admitted by defendant that the facts allegedly constituting the fraud were discovered by him at least three and one-half years before he filed his counterclaim against the plaintiff.

There is no evidence in this case giving rise to any extraordinary equities or legal defenses which might suspend the running of the statute of limitations.

Defendant has not sustained the burden of proving the fraud asserted in his counterclaim. There is no evidence that the financial statements of Louisville Fire and Marine Insurance Company and that the representations of its officers and agents were false and fraudulent in 1952 and 1953 when the defendant relied on them and purchased the stock. The only ground on which defendant has relied is that the statements and representations must have been false and fraudulent in view of the company's financial difficulties in December 1954. The evidence is unquestionably inadequate to prove two of the several necessary elements of fraud, namely, the falsity and fraudulence of the statements at the time defendant relied on them, and the speaker's knowledge of the falsity and fraudulence of the statements when he made them.

For the foregoing reasons, it is the judgment of this Court that the defendant take nothing by its counterclaim and that said counterclaim be, and the same hereby is, dismissed; and that the plaintiff be granted judgment in the amount of $12,162.20, plus interest and costs.

Counsel for plaintiff will prepare findings of fact and conclusions of law, together with judgment, in accordance with this memorandum and submit the same within fifteen (15) days from the date hereof and the clerk will enter an order accordingly.